OPINION
{¶ 1} Epicor Software Corporation appeals from the trial court's entry of a default judgment against it and the denial of its motion for reconsideration and for leave to file a reply to a counterclaim by appellee Sample Machining, dba BITEC.
 {¶ 2} Epicor advances two assignments of error on appeal. First, it contends the trial court erred in sustaining BITEC's motion for a default judgment on the counterclaim. Specifically, Epicor argues (1) that BITEC's counterclaim failed to state a cause of action for fraud or defamation, (2) that BITEC failed to submit any evidence supporting a damages award for fraud or defamation, and (3) that absent any evidence of damages an award of attorney's fees was improper. In its second assignment of error, Epicor claims the trial court erred in overruling its motion for reconsideration of the default judgment and motion for leave to file a reply to BITEC's counterclaim.
 {¶ 3} For the reasons set forth below, we conclude that BITEC's counterclaim adequately pled a cause of action for fraud. As for the purported defamation claim, we note that BITEC has disavowed any intent to plead such a claim. We do find, however, that BITEC failed to present evidence supporting the damages award on its counterclaim for fraud and that the trial court's award of attorney's fees cannot stand absent any damages. Finally, we are unconvinced that the trial court erred in overruling Epicor's combined motion for reconsideration and motion for leave to file a reply to the counterclaim. Accordingly, the trial court's judgment will be affirmed in part and reversed in part, and this cause will be remanded for further proceedings consistent with this opinion.
 Background {¶ 4} Epicor is a vendor of business software. It filed a complaint alleging that BITEC owed it $30,757.93 on an account. BITEC responded by filing an answer and a counterclaim for fraud. The essence of the counterclaim was that Epicor sent BITEC software with a promise that it could be returned if BITEC decided not to keep it. Epicor later rejected BITEC's effort to return the unopened software and mailed BITEC an invoice for it.
 {¶ 5} After Epicor failed to reply to the counterclaim, BITEC moved for a default judgment on it. Epicor did not file a memorandum in opposition to the motion. Nor did it appear at a subsequent evidentiary hearing on the motion. After listening to testimony on liability and damages from a representative of BITEC, the trial court sustained the motion for default judgment. The trial court awarded BITEC $30,757.93, which represented the amount of Epicor's invoice, plus an additional sum of $10,000 for Epicor's "disparagement" of BITEC's good name. The trial court also awarded BITEC attorney's fees and costs totaling $1,582.61.
 {¶ 6} Epicor subsequently filed a combined motion for reconsideration of the default judgment and motion for leave to file a reply to BITEC's counterclaim. With regard to its request for reconsideration, Epicor argued that BITEC's counterclaim failed to state a cause of action for fraud or defamation and that BITEC's evidence was insufficient to support an award of damages or attorney's fees. On the issue of leave to file a reply to the counterclaim, Epicor attributed its failure to file a timely reply to excusable neglect. The trial court overruled both branches of Epicor's motion. It found no excusable neglect, concluded that the allegations in BITEC's counterclaim were sufficient, and determined that BITEC's evidence supported an award of damages and attorney's fees. Epicor then filed a notice of voluntary dismissal of its complaint without prejudice, thereby making the trial court's disposition of the counterclaim final and appealable. This timely appeal followed.
 II. Analysis {¶ 7} In its first assignment of error, Epicor contends the trial court erred in sustaining BITEC's motion for a default judgment on the counterclaim. In support, Epicor argues that BITEC failed to plead a viable cause of action for fraud or defamation. It also argues that BITEC failed to present evidence to support an award of damages or attorney's fees in connection with any fraud or defamation.
 {¶ 8} Upon review, we quickly may dispose of Epicor's arguments insofar as they relate to a purported defamation claim. BITEC has disavowed any intent or attempt to plead such a claim, and the trial court made no findings with regard to a defamation claim. Epicor misreads the trial court's entry of default judgment as imposing liability for defamation based on a finding that Epicor had disparaged BITEC's good name. It is apparent to us, however, that the trial court's reference to Epicor's disparagement of BITEC's good name was not intended as a finding of liability on an unpled defamation claim. Rather, the trial court merely cited the disparagement of BITEC's good name as one basis for the compensatory damages it awarded on the fraud claim.
 {¶ 9} We also find no merit in Epicor's argument that BITEC failed to plead a viable fraud claim. In order to establish fraud, a party is required to demonstrate the following: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. Swift v. Allied Pest Control, Inc., Montgomery App. No. 18311, 2001-Ohio-1462.
 {¶ 10} In the present case, Epicor contends BITEC failed to allege in its counterclaim that Epicor made a false statement with knowledge of itsfalsity or with reckless disregard for whether the statement was true orfalse. According to Epicor, this omission rendered the counterclaim fatally defective and precluded the trial court from entering a default judgment on it. In support, Epicor cites case law for the proposition that a default judgment should not be entered when a complaint fails to state a claim. See, e.g., Buckeye Supply Co. v. Northeast Drilling Co.
(1985), 24 Ohio App.3d 134, 135-136; Michael D. Tully Co. v. Dollney
(1987), 42 Ohio App.3d 138, 141.
 {¶ 11} Upon review, we conclude that BITEC adequately pled a counterclaim for fraud. BITEC's counterclaim contains the following allegations:
 {¶ 12} "1. A sales agent of Plaintiff (`Sales Agent') contacted Defendant to sell to Defendant the software that is the subject matter of this dispute after Defendant's trial period on the evaluation package had expired. The Sales Agent telephoned Defendant several times, even though Defendant repeated that it was not prepared to purchase the software. The Sales Agent had told Defendant that a 25% down payment would have to be paid to Plaintiff before a purchase could be initiated and the software could be shipped.
 {¶ 13} "2. On a Friday afternoon, the Sales Agent telephoned again and made material representations on which Defendant relied. Namely, the Sales Agent offered to send the software Collect on Delivery, or C.O.D., and without the required down payment, and by doing so the Sales Agent said that she would be protecting a special price for the software for Defendant to give Defendant additional time to consider the purchase of the software and to give Defendant the option of declining to tender payment upon delivery of the software, which would then be returned to Plaintiff.
 {¶ 14} "3. Based on those representations of the Sales Agent, which were material and upon which Defendant relied to its detriment, Defendant agreed that Plaintiff should send the software C.O.D. and that Defendant would have the option to not tender payment for the software on its delivery.
 {¶ 15} "4. Defendant decided not to purchase the software and did not have payment prepared to be tendered upon the delivery of the software to Defendant.
 {¶ 16} "5. Plaintiff's Sales Agent failed to send the software by C.O.D. as she had represented to the Defendant; instead the Sales Agent, without the consent or authorization of Defendant, opened a line of credit for Defendant so that the package was delivered to Defendant and was not returned due to Defendant's decision to not tender payment upon delivery.
 {¶ 17} "6. Additionally, Plaintiff's Sales Agent failed to address the package to the representative of Defendant to whom she had spoken and the package was delivered to Defendant's shipping department where it sat for over one week before Defendant's representative was aware it had been delivered and not returned to Plaintiff because Defendant had not tendered payment for the package upon its delivery.
 {¶ 18} "7. Defendant's representative telephoned Plaintiff's Sales Agent and confronted the Sales Agent. At that time, the Sales Agent represented to Defendant that it was all a mistake, apologized, and gave an address to Defendant to return the software, which Defendant did immediately.
 {¶ 19} "8. Contrary to the representations of Plaintiff's Sales Agent, Plaintiff refused to accept the returned software from Defendant, re-shipped the software to Defendant, and invoiced the product without the consent or authorization of Defendant. The software has never been opened, is in its original vacuum-formed package, has not been installed, and Plaintiff has never issued to Defendant a password, which would be required to activate the software.
 {¶ 20} "9. As a result of Plaintiff's fraud, Defendant has now been harmed in the amount of the invoice for the software and all other charges on the invoice, in a minimum amount of $30,757.93. Furthermore, Defendant has been harmed by having to retain legal counsel to represent it in this matter and also asks this Court to award to Defendant all of its attorneys' fees and costs in this matter."
 {¶ 21} When considering whether BITEC's counterclaim fails to state a viable cause of action, we must take all of its factual allegations as true and draw all reasonable inferences in BITEC's favor. Mitchell v.Lawson Milk Co. (1988), 40 Ohio St.3d 190, 192. Moreover, in order to demonstrate that BITEC has failed to state a claim, Epicor must show beyond doubt that BITEC could prove no set of facts entitling it to relief. O'Brien v. University Community Tenants Union, Inc. (1975),42 Ohio St.2d 242, 245.
 {¶ 22} With the foregoing standards in mind, we find that BITEC pled a valid fraud claim upon which relief could be granted. The essence of the claim is that an Epicor sales agent made two key representations upon which BITEC reasonably relied: (1) prior to delivery, the sales agent represented that the software would be shipped C.O.D. and that BITEC could refuse delivery if it decided not to purchase the software; and (2) after delivery, the sales agent represented that the non-C.O.D. shipment was a mistake and that BITEC could return the software. BITEC's counterclaim alleges that both representations were false because the software was not sent C.O.D. and Epicor subsequently refused to accept its return and, instead, sent BITEC an invoice.
 {¶ 23} Although the counterclaim does not expressly allege that the sales agent made the representations with knowledge of their falsity or with reckless disregard for whether they were true, the facts alleged in the counterclaim, when construed most strongly in favor of BITEC, reasonably support such an inference. After assuring BITEC that the software would be sent C.O.D. and that delivery could be refused, the Epicor sales agent proceeded to establish a line of credit for BITEC and sent the software on an open account. The sales agent later insisted that the shipment was a mistake and instructed BITEC to return the software. BITEC immediately tried to do so, but Epicor inexplicably refused to accept the return and sent BITEC yet another invoice. Epicor later even commenced suit to compel payment.
 {¶ 24} In our view, the foregoing facts reasonably would support at least two inferences: (1) Epicor's employees acted with utter incompetence; or (2) Epicor's employees attempted to perpetrate a fraud by misrepresenting the terms of delivery, refusing to accept return of the unwanted software, and then demanding payment. Given that we are required to construe all reasonable inferences in BITEC's favor, we conclude that the counterclaim states a viable cause of action for fraud under the second scenario. It is not apparent from a review of BITEC's counterclaim that it could prove no set of facts entitling it to relief.
 {¶ 25} Epicor's remaining argument under its first assignment of error is that BITEC failed to present evidence to support an award of damages or attorney's fees. Although the trial court awarded BITEC $30,757.93, which is the amount of the invoice, and $10,000 for the "disparagement" of BITEC's good name, Epicor contends BITEC failed to present evidence to substantiate either component of the award. In addition, Epicor argues that absent evidence of damages attributable to the alleged fraud, an award of attorney's fees was improper. Alternatively, Epicor insists that attorney's fees cannot be awarded in a fraud action unless the evidence would support an award of punitive damages. Given its belief that punitive damages would not be warranted under the facts of the present case, Epicor argues that the trial court erred in awarding BITEC attorney's fees.
 {¶ 26} Upon review, we find the foregoing arguments to be persuasive. "`In order to make fraudulent acts or concealments actionable in a tortious sense, it is essential that the person complaining of the fraud shall have suffered harm and injury-damage. In Ohio, there is no claim (cause of action) for fraud or deceit in the air; the party claiming fraud must show that the fraud has come to rest, causing him injury. He must have been damaged or misled to his hurt.'" Pappas Realty Co. v.Wharton (July 11, 1984), Summit App. Nos. 11222, 11223, 11233, quoting 51 Ohio Jurisprudence 3d 13, Fraud and Deceit, Section 154.
 {¶ 27} At the evidentiary hearing, BITEC Vice President Kevin Bleicher testified as follows with regard to compensatory damages and attorney's fees:
 {¶ 28} Counsel: "How have you been harmed in this action?"
 {¶ 29} Bleicher: "Well, [Epicor] broke a perfect record, [BITEC has] been in business for 20 years and never had to sue anyone or never been sued."
 {¶ 30} Counsel: "You've never been sued in a collection action before, BITEC has never been sued."
 {¶ 31} Bleicher: "Never been sued in any action financially."
 {¶ 32} Counsel: "And are you asking this Court for a judgment against Plaintiff in the amount of the billing invoice attached to the Complaint?"
 {¶ 33} Bleicher: "$30,757.93."
 {¶ 34} Counsel: "Have you been harmed in any other way?"
 {¶ 35} Bleicher: "Attorney fees."
• * *
 {¶ 36} Counsel: "What is that amount?"
 {¶ 37} Bleicher: "$1,132.61."
• * *
 {¶ 38} THE COURT: "So that will be an additional $450.00 in attorney fees which is $1,582.61. Is that correct, sir?"
 {¶ 39} Bleicher: "Yes."
 {¶ 40} THE COURT: "All right, any other damage?"
 {¶ 41} Bleicher: "Other than my good name, disparage, but" [sic]
 {¶ 42} Counsel: "And have you had to disclose this [lawsuit] to new clients?"
 {¶ 43} Bleicher: "Yes, in large contract proposals, we have to disclose our financials."
 {¶ 44} Counsel: "And, but that is more to the good name of the company."
 {¶ 45} Bleicher: "Well, it is to good name and it also goes to our financeability, and renewal of our line of credit and other things."
 {¶ 46} Counsel: "Have you noticed a drop in business at this point because of this though?"
 {¶ 47} Bleicher: "Not specifically, but one never knows why one is not awarded business, it only knows why one won."
 {¶ 48} After hearing additional testimony on the issue of attorney's fees, the trial court ruled as follows:
 {¶ 49} "All right, on the Defendant's counterclaim, I'm going to find that the, first of all there was a default on behalf of the Plaintiff on the counterclaim[.] I am going to issue judgment in favor of the Defendant and against the Plaintiff in the amount of $40,757.93, which represents the $30,757.93 requested by the Defendant as well as $10,000 in additional damages as a result of the, this is probably not a word, but I'm going to say it anyway, disparagement to the Defendant's business and credit [and] additionally the attorney's fees in the amount of $1,582.61 on your counterclaim." The trial court later journalized these findings in a written entry.
 {¶ 50} Although Epicor had sent BITEC an invoice for $30,757.93, we note that BITEC never paid the bill. BITEC fails to explain how it was damaged in the amount of a bill that it has not been required to pay. Moreover, even assuming that disparagement of BITEC's name and reputation is compensable as a type of harm to good will, the record fails to reflect any actual damages. While Bleicher testified that he had been required to disclose the existence of Epicor's lawsuit, he did not identify any loss of prospective customers or any actual harm, as opposed to possible or potential harm, to BITEC's financial standing. In light of Bleicher's testimony, which was the sole basis for the trial court's damages award, we conclude that the award of compensatory damages was purely speculative and unsupported by the evidence. BITEC simply failed to show how it was harmed by Epicor shipping it software that it did not want and for which it has not paid. As a result, the trial court erred in awarding BITEC compensatory damages on its counterclaim for fraud.
 {¶ 51} We are equally persuaded by Epicor's argument that the trial court's award of attorney's fees cannot stand. "[I]t is well settled that attorney fees can only be awarded in fraud cases where punitive or exemplary damages would be appropriate." White Oak Communities, Inc. v.Russell (Nov. 9, 1999), Franklin App. No. 98AP-1563, citing Saberton v.Greenwald (1946), 146 Ohio St. 414; see also Carr v. Charter NationalLife Ins. Co. (1986), 22 Ohio St.3d 11, 13. "To establish a claim for punitive damages in an action for fraud, [a party] must demonstrate, in addition to proving the elements of the tort itself, `that the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or egregious.'" Leal v.Holtvogt (1998), 123 Ohio App.3d 51, 78.
 {¶ 52} In the present case, the trial court made no finding that Epicor acted with malice or ill will when it shipped software to BITEC and refused to accept return of the same.
 {¶ 53} The trial court also made no finding that Epicor's wrongdoing was particularly gross or egregious as compared to the types of conduct ordinarily constituting fraud. In any event, we conclude that BITEC failed to present evidence that would be sufficient to support either of the alternative required findings. Indeed, whether BITEC proved fraud at all, as opposed to mere incompetence, is perhaps a close question. But even giving BITEC the benefit of the doubt on that issue, we see no evidence in the record to support a finding that Epicor acted out of malice or ill will, or that its actions were particularly gross or egregious. As a result, the trial court should not have awarded BITEC attorney's fees.
 {¶ 54} Finally, we sua sponte have considered whether BITEC might be entitled to some nominal damages on its fraud counterclaim and whether such damages might support an award of attorney's fees. We answer both questions in the negative. Actual damage is an essential element of a cause of action for fraud. "When actual damage is an element of the cause, nominal damages are unavailable." Lyle v. Aron (Oct. 31, 1997), Lucas App. No. L-97-1128; see also Stojkovic v. Avery Thress (May 28, 1999), Hamilton App. No. C-970279 (recognizing that nominal damages are not available when actual damages are an element of a cause of action);Akron First Seventh Day Adventist Church v. Smith (Sept. 27, 1984), Summit App. No. 11577 ("We note that injury or a demonstration of damages is a necessary element in a cause of action for fraud. Although nominal damages will support an award of punitive damages in certain cases, fraud requires the showing of actual loss to support punitive damages.").
 {¶ 55} Based on the foregoing reasoning, we conclude that the trial court erred in awarding BITEC damages on its counterclaim for fraud. The award cannot stand because BITEC failed to present evidence of an injury proximately caused by Epicor's fraud and, therefore, failed to establish an essential element of its claim. See Swift v. Allied Pest Control,
supra, at *6. For the reasons set forth above, we also conclude that the trial court erred in awarding BITEC attorney's fees in connection with its counterclaim for fraud. Accordingly, we sustain Epicor's first assignment of error.
 {¶ 56} In its second assignment of error, Epicor claims the trial court erred in overruling its combined motion for reconsideration of the default judgment and motion for leave to file a reply to BITEC's counterclaim. In support, Epicor argues that the trial court should have reconsidered its default judgment and granted leave to file a reply to the counterclaim based on the existence of excusable neglect.
 {¶ 57} The trial court's default judgment was interlocutory, given that the cause of action in Epicor's complaint remained pending. Thus, the default judgment remained subject to revision under Civ.R. 54(B), and Epicor was entitled to seek leave to file a tardy response to the counterclaim. As both parties properly note, the excusable-neglect standard under Civ.R. 6(B) governs such requests. This standard is similar to the excusable-neglect standard under Civ.R. 60(B) but it is applied less stringently.[1] State ex rel. Lindenschmidt v. ButlerCounty Bd. of Commissioners, 72 Ohio St.3d 464, 466, 1995-Ohio-49. In the present case, Epicor contends its failure to file a timely reply to the counterclaim was the result of excusable neglect because it was attributable to "miscommunications between Epicor, its attorney, and the collection agency" hired to seek payment from BITEC.
 {¶ 58} Upon review, we cannot say that the trial court abused its discretion in finding no excusable neglect. Epicor has identified no unusual or special circumstances justifying its failure to file a timely reply to BITEC's counterclaim. Three days after the deadline for filing the reply, Epicor's attorney moved to withdraw, citing "irreconcilable differences" between attorney and client. Epicor cites these unspecified differences as grounds for finding excusable neglect in counsel's failure to respond to the counterclaim. But we see no reason why Epicor's attorney could not have moved to withdraw, filed a response, and/or moved for an extension of time to respond prior to the filing deadline. We certainly cannot say that the trial court abused its discretion in rejecting Epicor's argument on this point. Having reviewed the record, we also cannot say that the trial court abused its discretion in finding no excusable neglect in Epicor's failure to respond to its various orders preceding the default judgment. Accordingly, we overrule Epicor's second assignment of error.
 {¶ 59} Notwithstanding the foregoing conclusion, we note that the trial court's award of compensatory damages totaling $40,757.93 and attorney's fees cannot stand for the reasons we set forth earlier. Regardless of Epicor's inability to demonstrate excusable neglect, it still was entitled to challenge the trial court's damages award on the basis that BITEC's evidence at the default judgment hearing failed to support the award. Carr v. Charter National Life Ins. Co. (1986),22 Ohio St.3d 11, 13-14; Hommel v. Mark 500, Inc. (Oct. 23, 1986), Cuyahoga App. No. 51005 at *6-7. When there is a lack of excusable neglect by the opponent of a motion for default judgment but also an absence of evidence to support a trial court's damages award for the movant, the proper remedy is to reverse the trial court's judgment and remand the cause for a new hearing on the issue of damages. Carr,22 Ohio St.3d at 14; Hommel, supra, at *7.
 III. Conclusion {¶ 60} Based on the reasoning set forth above, we hereby affirm in part and reverse in part the judgment of the Montgomery County Common Pleas Court and remand the cause for further proceedings consistent with this opinion. The trial court's judgment is affirmed insofar as it overruled Epicor's motion for reconsideration and for leave to file a reply to BITEC's fraud counterclaim. The trial court's judgment is reversed, however, insofar as it awarded BITEC compensatory damages of $40,757.93 and attorney's fees. Finally, the cause is remanded for a new hearing on the issue of damages.
Wolff, J., and Donovan, J., concur.
[1] Although Epicor quarrels with the trial court's citation to excusable neglect under Civ.R. 60(B), as opposed to Civ.R. 6(B), any error in this regard was invited and, in any event, harmless. In its motion to reconsider and for leave to file a reply, Epicor itself cited "the standards of Civil Rule 60(B)[.]" (See Doc. #21 at 1). Moreover, even applying the less stringent version of excusable neglect applicable to Civ.R. 6(B), we find no abuse of discretion in the trial court's ruling.