NEWCOMB ET AL., APPELLEES, *v.* DREDGE ET AL., APPELLANTS.

(No. 539—Decided November 1, 1957.)

*Mr. Charles W. Frayne* and *Mr. Wilmore Brown,* for appellees.

*Messrs. Cole & Cole,* for appellants.

*Per Curiam.* This is an appeal on questions of law from a judgment of the Common Pleas Court of Clark County.

A civil action for damages was filed by Cecil Arthur Newcomb, the owner of a house and contents, and the Orient Insurance Company, the insurer of the house and contents against fire, against Howard Z. Dredge and Hettie Dredge, in which plaintiffs, appellees herein, alleged that Newcomb's house and contents were damaged by fire as a result of defendants' operation of a dump. The matter was tried to the court without a jury. Judgment was rendered in favor of the plaintiffs for the sum of $4,919.25.

The defendants, appellants herein, have assigned five separate claimed errors: In the admission of testimony respecting other fires on the property of plaintiff Newcomb; in the introduction into evidence of a letter written by a third person, not a party to the action, to the defendants after the fire took place; in the overruling of a motion of defendants to dismiss at the close of the plaintiffs' case; and that the judgment is against the manifest weight of the evidence and contrary to law.

On October 10, 1952, the Dredges, being then the lessees with an option to purchase, and later the owners, of a tract of land located in the southwest part of the city of Springfield, entered into a written agreement with Harry Reeder, whereby the Dredges licensed Reeder to do and perform certain acts, as follows: (1) To enter upon the premises and dump inorganic materials and very small amounts of organic materials—in the latter event, the same were to be covered within 12 hours; (2) such materials were to be dumped as directed by the Dredges from time to time; (3) the Dredges reserved the right to the use of the remaining property; (4) Reeder was to obey and comply with the Sanitary Code and certain of the statutes and regulations governing this type of operation; (5) reasonably soon after the execution of this agreement Reeder was to construct

a bank at the creek using only crushed concrete or like materials; (6) Reeder was to construct a roadway into the property at a space agreed upon by and between the parties, and use this roadway only; (7) Reeder was not to interfere with the proper use of the premises not covered by this agreement; (8) the agreement was to remain in full force and effect for a period of two years; (9) Reeder was to pay to the Dredges $100 on execution of the agreement and $37.50 per month thereafter; (10) Reeder agreed that this agreement was made subject to all rights and easements contained in an agreement between the Dredges and Newcomb; (11) the Dredges reserved the right to cancel this agreement in the event they entered into an agreement with the city of Springfield; (12) and, upon the failure of Reeder to pay any installment when due or in the event of the violation of any statutes or lawful regulations by Reeder or of the bankruptcy of Reeder, or in the event any part of the assets of Reeder would be seized under judicial process or should Reeder maintain a nuisance, then the Dredges had the right immediately to cancel this agreement without notice and to re-enter, all without prejudice to any claim theretofore accruing. The agreement designates the Dredges as "licensers" and Reeder as "licensee."

The plaintiffs claim a right to recover on the ground that the evidence shows Reeder to be the agent of the Dredges, or on the ground that Reeder maintained a nuisance, and that even though Reeder was an independent contractor, as claimed by the Dredges, they would still be liable on the theory that they permitted a nuisance on the property and also operated a burning dump which was inherently dangerous to surrounding property. The defendants contend that Reeder was not an agent, but was an independent contractor; that the dump was not a nuisance; and that the burning of combustible material on the dump did not render it inherently dangerous to surrounding property.

Without question the evidence shows that the Dredges and Reeder intended the agreement to confer a license on Reeder for the purpose of dumping material, Reeder taking the salvage.

"A license is 'a personal, revocable, and nonassignable privilege, conferred either by writing or parol, to do one or

more acts upon land without possessing any interest therein.' A license amounts to no more than an excuse for an act which would otherwise be a trespass. It constitutes a protection to the party acting under it until revocation takes place. The fact that a license rests on consideration does not prevent it from being a license even though an annual payment is made therefor." 25 Ohio Jurisprudence, 315, Section 2.

The agreement was essentially a license. However, one of the determinative issues is whether Reeder was an agent of the Dredges, or was an independent contractor. The nature of the right intended to be created by the parties conforms more closely to the elements creating the relationship of independent contractor. The reservation of the use of the remaining property by the Dredges, the right of cancellation without notice, and the right to re-enter by the Dredges, are not incompatible with the relationship of an independent contractor.

The right of control is the distinguishing feature between the relationship of an independent contractor and an agency relationship. The distinction is stated in 2 Ohio Jurisprudence (2d), 39, Section 5, as follows:

"* * * A principal has the right to control the conduct of his agent with respect to matters entrusted to him, whereas the independent contractor is subject to control in the performance of the contract only as to the result. One employed by another is to be regarded as an agent or an independent contractor according as he is subject to, or free from, the control of the employer with respect to the details of the work. An independent contractor is defined as one who in the exercise of an independent employment contracts to do a piece of work according to his own methods, and without being subject to the control of the employer except as to the product or result of his work. If power of control over the work is reserved, the actor is either an agent or a servant, and to make him an agent it is only necessary that the principal have the power of control; the mere fact that the principal does not exercise control over his agent, but chooses to leave details of the work to the latter's discretion, does not alter the relation of the parties, or make the agent an independent contractor * * *."

The clause in the contract which is most in controversy is as follows:

"Said materials are to be dumped as directed by Licensers from time to time."

Howard Dredge testified that under Item 2 the Dredges had a right to direct where the material would be dumped, as the ravine was to be filled by the use of a roadway to be first filled and later an embankment to be made near the creek to prevent refuse falling into the creek. Thus, the control which could be exercised by the Dredges under clause 2 of the contract related to the result; it did not relate to details. The distinction between control of result but not of the means of performance is made in 21 Ohio Jurisprudence, 626, Section 4, as follows:

"Generally speaking, every contract for work to be done by an independent contractor leaves in the employer at least a certain degree of control—the result to be such as stipulated for in the contract. The exercise by the employer of a limited control over the work does not render the employee a servant, inasmuch as the relation of master and servant is not deducible from a reservation of powers which does not prevent such employee from doing the work according to his own initiative. The control of the work reserved in the employer which makes a master-servant relation is a control of the means and manner of performance of the work as well as of the result; where, however, the employee represents the will of the employer only as to the result, but not as to the means or manner of accomplishment, he is an independent contractor."

Applying the foregoing test to the contract, we conclude that the relationship of Reeder to the Dredges was that of an independent contractor.

Are the Dredges liable for the acts of the independent contractor? The general rule is that an employer is not liable for the negligence of an independent contractor. 21 Ohio Jurisprudence, 641, Section 19. However, the general rule is subject to several well-recognized exceptions. 21 Ohio Jurisprudence, 643, Section 19. One of the exceptions is where the work to be done is inherently dangerous. 21 Ohio Jurisprudence, 650, Section 26. And also where the work to be done involves a nuisance. 21 Ohio Jurisprudence, 653, Section 29.

In the instant case combustible material was deposited on the dump and fires were started on the dump from time to time

by spontaneous combustion, and at other times fires were purposely set. For some time prior to the date on which plaintiff suffered a fire loss, at the request of and in compliance with the instructions of the authorities of the city of Springfield, no fires were set on the dump, although a week or two elapsed before the fires then burning on the dump burned out. There is some evidence to support the conclusion of the trial court that the fire which caused the loss resulted from a previously set fire which was still smouldering. On the day in question there was a considerable amount of combustible material on the dump; a fire started; Reeder's employee was engaged in collecting salvage on the dump; it was not the duty of such employee to attend or control the fires on the dump and he made no attempt to do so. Sparks and burning material from the dump ignited a trailer in which such employee lived. While the trailer was burning it was observed that the roof of plaintiff's house had caught fire. Burning fragments from the dump, and also from the trailer which was closer to the house than the dump, were seen being carried by the wind in the direction of plaintiff's house. For all practical purposes the fire on the dump was left unattended.

Are the Dredges liable for the resulting damage? Whether certain work is inherently dangerous is difficult of determination. The application of the rule is limited to dangerous work, and can not be extended to proper work dangerously done. 21 Ohio Jurisprudence, 650, Section 26. The burning of combustible material in the open, unattended, is a dangerous operation. In our opinion the operation of a burning dump is a work which is inherently dangerous, especially so when, as in the instant case, the fires were left unattended and no person was charged with responsibility to keep the fire under control as a protection to surrounding property. The Dredges can not be relieved of liability on the ground that Reeder was an independent contractor. The duty rested upon the Dredges to see to it that the dumping was operated in a safe manner and not as a hazard to surrounding property. See *Carman* v. *Steubenville & Indiana Rd. Co.*, 4 Ohio St., 399, 415; also, annotations in 24 A. L. R. (2d), 241 *et seq.*, paragraph 33 at page 290, where the rule is stated as follows:

"An employer is liable for injuries caused by the failure of an independent contractor to exercise due care in respect of the performance of work which is inherently and intrinsically dangerous." (Cases cited.)

Did the operation of the dump constitute a nuisance? We think it did, under the circumstances in this case. Where a dump is used for the deposit of a large amount of combustible material, which results in fires started by spontaneous combustion and, at times, fires are set, and the evidence shows that such fires are unattended and no one is placed in charge to control the fires thus started, and where burning fragments are carried through the air by the wind to a considerable distance onto adjacent property, the operation of such dump constitutes a private nuisance. In 30 Ohio Jurisprudence, 301, Section 4, a private nuisance is defined as follows:

"If a person so uses his property as to damage another person's property or disturb his quiet enjoyment of it a private nuisance exists."

In *Williams* v. *Pomeroy Coal Co.*, 37 Ohio St., 583, at page 589, a private nuisance is defined as follows:

"In Stephen's Commentaries (vol. 3, 499), a private nuisance is defined to be 'anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another, and not amounting to a trespass.'"

A dump is not a nuisance of itself, or per se, but it may be or become a nuisance. 66 Corpus Juris Secundum, 802, Section 49. In *Maynard* v. *Carey Construction Co.*, 302 Mass., 530, 533, 19 N. E. (2d), 304, the court said:

"The rule seems to be established that a landowner is not liable, merely because he holds the title, for the consequences of a private nuisance which he did not create, unless he suffers it to continue after notice to abate it or at least after knowledge of its existence."

In the instant case, the Dredges assisted in creating the nuisance, and the evidence shows that they continued the nuisance after receiving complaints by the authorities of Springfield and instructions by such authorities to abate it, at least so far as the maintenance of a burning dump which was unattended and uncontrolled. In *City of Nashville* v. *Mason*, 137

Tenn., 169, 192 S. W., 915, the second paragraph of the syllabus is as follows:

"A garbage dump, upon which large quantities of material were burned during a high wind, constituted a nuisance rendering the municipality liable, where the fire communicated itself to plaintiff's property."

In *City of Selma* v. *Jones,* 202 Ala., 82, 79 So., 476, a municipal dump was held to be a private nuisance. In *Kepler* v. *Industrial Disposal Co.,* 84 Ohio App., 80, 85 N. E. (2d), 308, it was held that a private dump on which industrial wastes were burned was a private nuisance by reason of the stench and smoke arising therefrom. See, also, *State, ex rel. Pansing,* v. *Lightner,* 32 N. P. (N. S.), 376; *State, ex rel. Heck, Pros. Atty.,* v. *Grillot,* 71 Ohio Law Abs., 170, 128 N. E. (2d), 552; 39 American Jurisprudence, 361, Section 94.

We conclude that under either theory—work inherently dangerous or work involving a private nuisance—the Dredges are liable for loss to plaintiff's property. The pleadings and the evidence will support this conclusion. It is the duty of the reviewing court to affirm the judgment if it can be supported on any theory, although a different theory from that of the trial court. The judgment is not against the manifest weight of the evidence, or contrary to law.

The defendant may not predicate error on the overruling of defendant's motion to dismiss at the close of plaintiff's case, when the defendant failed to renew the motion to dismiss at the close of all the evidence.

We find no prejudicial error in the admission of evidence. The plaintiff was permitted to introduce evidence with respect to previous fires, which we think was admissible as it tended to show knowledge on the part of the defendants. Under the circumstances in this case and in light of other testimony properly admitted, this evidence, if inadmissible, could not be considered prejudicial. A letter written by an official of the city of Springfield, shortly after the fire loss, to Howard Dredge was admitted for a limited purpose, to wit, to show the extent of control exercised by the Dredges over the operation of the dump. We question the admissibility of this evidence, but on the state of the record with respect to other evidence properly admitted, this evidence was not prejudicial.

We find no error in the record prejudicial to the rights of the appellants.

*Judgment affirmed.*

HORNBECK, P. J., WISEMAN and CRAWFORD, JJ., concur.