OPINION *Page 2 
{¶ 1} Defendant Administrator of the Bureau of Workers' Compensation appeals the decision of the Jefferson County Common Pleas Court which granted a new trial to plaintiff Benita Carter after a jury found that she was not entitled to participate in the Worker's Compensation Fund. The administrator alleges that the trial court's entry granting a new trial was insufficient and the trial court's decision constituted an abuse of discretion. Ms. Carter cross-appeals the trial court's denial of her motion for directed verdict and her subsequent motion for judgment notwithstanding the verdict. We hold that the trial court reasonably denied Ms. Carter's motions for directed verdict and JNOV as reasonable minds could reach different conclusions on various issues. As such, her cross-appeal is denied.
 {¶ 2} The administrator's appeal is also denied. Due to various errors which pervaded the trial and tainted the jury verdict, we affirm the trial court's grant of a new trial in favor of Ms. Carter. Most specifically, the court used the wrong statutory definition of employee and did not correct the administrator's continual misstatements that a corporate owner or officer cannot be an employee. This case is hereby returned to the trial court for the new trial to proceed in accordance with this opinion.
 STATEMENT OF THE CASE {¶ 3} Benita Carter is said to have run R B Pizza Company, Inc., dba Pizza Express, a business located next to her house in Cadiz, Ohio. She was the vice president, treasurer and secretary, and her husband was the sole stockholder and president. (Tr. 156-157). Her husband also owned Wise Guys Pizza, Inc., dba Speedies Pizza, a business he operated in Midland, Pennsylvania.
 {¶ 4} In September 2001, Ms. Carter was driving on Route 22 in Jefferson County when a drunk driver entered oncoming traffic and crashed into her vehicle. She filed for Ohio workers' compensation benefits claiming that she had been delivering pizza supplies from the Pennsylvania pizza store to R B Pizza in Ohio. When her application was denied and the Industrial Commission refused her appeal, she filed a complaint and notice of appeal in the trial court.
 {¶ 5} At trial, the central questions were whether she was an employee of R B Pizza and whether she was injured in the course of her employment. As to her employee status, the administrator made two arguments: that she was actually an *Page 3 
employee of the Pennsylvania store and/or that she was an owner rather than an employee.
 {¶ 6} Two long-time customers of R B Pizza testified that in their weekly visits to the store, they have witnessed Ms. Carter answering the telephone, making dough and pizza, putting together boxes, putting shipments away and acting as cashier. (Tr. 131-132, 142). A prior employee of R B Pizza testified that Ms. Carter ran the store, characterizing it as "her shop." (Tr. 137). He noted that she wrote out the paychecks and sometimes made dough. (Tr. 136, 139). Ms. Carter's son testified that he helped out in his mother's pizza shop. (Tr. 145). He confirmed her multitude of duties at R B Pizza, pointing out that she worked in the store the majority of the time and also did paperwork at home next door where she received images from the store's security cameras. (Tr. 146-147). He also disclosed that his mother goes to the Pennsylvania store at times to help his father. (Tr. 150).
 {¶ 7} Ms. Carter's husband then explained that on the day of the accident, they drove to the Pennsylvania store to meet with their bookkeeper and for Ms. Carter to pick up supplies (which she had to receive from the Pennsylvania store after her suppliers stopped accepting R B Pizza's credit). (Tr. 158-159). When the bookkeeper failed to keep the appointment, Ms. Carter may have helped out at the store. Mr. Carter testified that Ms. Carter drove them back because he had a few drinks. (Tr. 175). He also pointed out that at the time of the accident, the car contained cheese, dough, pepperoni, sausage, sauce, buns and flour. (Tr. 160, 163-164). An amended highway patrol inventory noted the presence of some of these pizza supplies at the scene of the accident. (Tr. 164).
 {¶ 8} Mr. Carter testified about his ownership of both stores, noting that he purchased the Ohio store twenty years ago. (Tr. 152, 157, 170). He stated that Ms. Carter ran R B Pizza in Cadiz and did not help run the Pennsylvania store. (Tr. 154, 158). He stated that although Ms. Carter is an officer of the Ohio store, she is not an officer of the Pennsylvania store. (Tr. 170). He also disclosed that in 2001, Ms. Carter was compensated with weekly checks of $100 that were written on the account of his Pennsylvania store because R B Pizza was doing poorly. (Tr. 156, 182). He said she also received compensation from R B Pizza as the company account was used to pay some of her personal bills. (Tr. 183). *Page 4 
 {¶ 9} It was pointed out that Ms. Carter received a W-2 from R B Pizza in 1998 but not thereafter. (Tr. 229-229). When Ms. Carter was asked why she received a 2001 W-2 from the Pennsylvania store, she stated that she did not work there and that the bookkeeper was asked to correct this issue. (Tr. 204-205). When asked why she signed forms after the accident that listed the Pennsylvania store as her employer, Ms. Carter said she was heavily medicated at the time. (Tr. 212). She confirmed that she was compensated from R B Pizza in the form of personal expenses; for instance, she used the business account to make payments on credit cards. (Tr. 201-202). Evidence from the account established such payments.
 {¶ 10} Ms. Carter also testified that she worked twenty hours four to five days a week at R B Pizza and also worked at home on the store's bills and paperwork. (Tr. 198). She pointed out that she not only ran R B Pizza but also cleaned, made pizza, ordered supplies, paid bills, organized bookwork, did deposits and occasionally made deliveries. (Tr. 197).
 {¶ 11} The Carters' new accountant, a CPA, testified that one store paying an employee of another store can be accomplished for accounting purposes and that it is not unusual for a corporate officer to have some personal expenses paid from the corporate account. (Tr. 237-242). It was also emphasized that their prior "accountant" was merely a bookkeeper with no knowledge of how to perform proper accounting practices on such matters.
 {¶ 12} The administrator presented the testimony of the Carters' former bookkeeper, who identified exhibits showing that she listed both Carters as employees of the Pennsylvania store for unemployment and local tax purposes. (Tr.13. 15-16, 20-23). She confirmed that Ms. Carter received paychecks from the Pennsylvania store rather than from R B Pizza. (Tr. 28-29, 41). The bookkeeper could not testify as to where Ms. Carter actually worked but believed that Ms. Carter was responsible for R B Pizza. (Tr. 69-70, 78).
 {¶ 13} After the testimony was concluded, Ms. Carter sought a directed verdict, which the trial court denied. The administrator's closing arguments relied heavily on their belief that Ms. Carter cannot be an employee if she is the owner or acts as the owner. The court instructed the jury that it was to determine whether Ms. Carter was an employee on the date of the accident and whether she suffered her injury in the course of employment. The court then defined employee and course of employment. *Page 5 
On November 16, 2005, the jury returned a verdict in favor of the administrator, prohibiting Ms. Carter from participating in the Workers' Compensation Fund.
 {¶ 14} Ms. Carter filed a timely motion for JNOV or for new trial. On January 12, 2006, the trial court denied the motion for JNOV but granted a new trial without explanation. Both the administrator and Ms. Carter filed timely notices of appeal. Prior to addressing the merits of the case, this court remanded for the trial court to specify its grounds for granting a new trial. Carter v. R B Pizza Co., Inc. (Jan. 22, 2007 J.E.), 7th Dist. No. 06JE5.
 {¶ 15} On February 20, 2007, the trial court issued its amended entry stating that a new trial was granted because the judgment was not supported by the weight of the evidence under Civ.R.59(A)(6). The court set forth the definition of employee as used in its jury instruction and found Ms. Carter clearly fell within that definition. The court also opined that the testimony established that she was within the scope of her employment at the time of the accident. Finally, the court mentioned that the bookkeeper's testimony did not require a finding that Ms. Carter was not an employee. The case is now before us.
 MS. CARTER'S CROSS APPEAL {¶ 16} Ms. Carter's cross appeal claims that the trial court erred when it failed to grant her motion for a directed verdict and then her motion for JNOV. She claims that reasonable minds can only come to the conclusion that she was an employee of R B Pizza and that she was injured in the course and scope of her employment. She alleges that there is no evidence contrary to her evidence that she is an employee of R B Pizza.
 {¶ 17} We begin by pointing out that merely because the trial court granted a new trial under Civ.R. 59(A) does not mean it should have granted JNOV or directed verdict under Civ.R. 50 as different standards apply to a motion under each rule. Osler v. City of Lorain (1986),28 Ohio St.3d 345, 351. Pursuant to Civ.R. 50(A)(4):
 {¶ 18} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." *Page 6 
 {¶ 19} As such, the trial court is not permitted to consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion as the ruling is a legal decision on the sufficiency of the evidence, rather than a factual decision. Wagner v.Roche Labs. (1996), 77 Ohio St.3d 116, 119. A motion for JNOV under division (B) of Civ.R. 50 is governed by this same standard. Texler v.D.O. Summers Cleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677,679. If reasonable minds could differ on the necessary elements of the case, then neither a directed verdict nor JNOV should be granted. Id. at 679-680.
 {¶ 20} This case is at least partially based upon credibility determinations, which are not part of the equation in ruling on such motions. See id. Although the evidence in Ms. Carter's favor is strong, we must construe the evidence in the light most favorable to the non-movant. Id. In doing so, we cannot as a matter of law find Ms. Carter and her witnesses truthful. Specifically, we cannot say that no reasonable mind could find that Ms. Carter was not an Ohio employee or that she was in the course of employment at the time of the accident. Rather, there was at least some evidence presented by the administrator that one could use to rationally question Ms. Carter's status as an Ohio employee and to question whether she was merely driving home with supplies in her car or whether she was in fact acting within the course of her employment driving between two stores.
 {¶ 21} Consequently, the evidence was legally sufficient for the case to proceed to the jury and thus for the court to thereafter refuse to enter judgment notwithstanding the verdict. See Wagner,77 Ohio St.3d at 256, fn. 2, citing Gladon v. Greater Cleveland Regional TransitAuth. (1996), 75 Ohio St.3d 312, 318-319 ("Our conclusion that appellees were not entitled to a directed verdict mandates the conclusion that appellees also were not entitled to judgment notwithstanding the verdict."). The trial court's decisions to deny Ms. Carter's motions for directed verdict and for JNOV are thus affirmed.
 ADMINISTRATOR'S APPEAL {¶ 22} The administrator argues in its appeal that the trial court's grant of Ms. Carter's motion for a new trial should be reversed because the reasons provided in the court's amended entry were insufficiently articulated and because the court abused its discretion and merely substituted its judgment for that of the jury. The administrator *Page 7 
contends that it was within the jury's province to find that Ms. Carter was not an Ohio employee either because she was a Pennsylvania employee or because she acted like an owner. The administrator alternatively contends that it is unreasonable for the trial court to substitute its judgment for that of the jury on the question of whether she was in the course of her employment at the time of the accident. The administrator notes that the Carters said they went to Pennsylvania for a meeting with the bookkeeper; however, they acknowledged that the bookkeeper did not show, and the bookkeeper testified that the meeting was not scheduled for that evening. The administrator also points to Mr. Carter's statements that he had been drinking and the fact that the accident occurred near midnight as tending to support their claim that the fact the car contained pizza supplies does not require a decision that she was still working at the time of the accident.
 {¶ 23} Pursuant to Civ.R. 59(A), a new trial may be granted on any of the following grounds: (1) irregularity in the proceedings of the court, jury or prevailing party, or any order or abuse of discretion that prevented a fair trial; (2) misconduct of the jury or prevailing party; (3) accident or surprise which ordinary prudence could not prevent; (4) damages influenced by passion or prejudice; (5) error in the amount of recovery in contract or certain property action; (6) the judgment is not sustained by the weight of the evidence; (7) the judgment is contrary to law; (8) newly discovered material evidence that was undiscoverable with reasonable diligence; (9) error of law occurring at trial and brought to the attention of the court by the movant; and (10) any other reason in the sound discretion of the court for good cause shown.
 {¶ 24} As the administrator points out, the trial court cannot grant a new trial merely because it would have decided the case differently; the court can review credibility and weight, but its power is more restricted than the jury's power of conducting a substantially unlimited review. Rohde v. Farmer (1970), 23 Ohio St.2d 82, 92. The trial court's decision granting a new trial is reviewed for an abuse of discretion.Mannion v. Sandel (2001), 91 Ohio St.3d 318, 322. This standard only allows appellate reversal of the grant of a new trial if the trial court acted unreasonably, arbitrarily or unconscionably. Harris v. Mt. SinaiMed. Ctr, 116 Ohio St.3d 139, 2007-Ohio-5587, ¶ 36 (defer to trial court and uphold grant of new trial if competent, credible evidence to support court's finding). The appellate court must view the evidence favorably to the trial court's action rather than to the jury's verdict.Mannion, *Page 8 91 Ohio St.3d at 322, citing Jenkins v. Krieger (1981), 67 Ohio St.2d 314, 320. Moreover, a new trial can be upheld if there are aberrations that pervade the record or other glaring defects that caused a miscarriage of justice. Jenkins, 67 Ohio St.3d at 321.
 {¶ 25} In granting a new trial, the trial court shall specify in writing the grounds upon which such new trial is granted. Civ.R. 59(A). In doing so, the trial court must articulate its reasons for granting a new trial in a fashion so that the reviewing court can determine whether the trial court abused its discretion in granting the new trial.Antal v. Olde Worlde Prods., Inc. (1984), 9 Ohio St.3d 144, 145-146 (it is insufficient to merely reveal that the basis for new trial is weight of the evidence). There is no hard and fast rule regarding the sufficiency of the language as the reviewing court must make a case-by-case determination as to whether meaningful appellate review of the trial court's decision is available from the language of the entry. See id. See, also, Mannion, 91 Ohio St.3d at 321-322.
 {¶ 26} Here, we find that the trial court's decision to grant Ms. Carter a new trial was correct, but not for the reasons stated by that court. Moreover, and notwithstanding our rejection supra of Ms. Carter's assignments of error seeking judgment to be rendered in her favor as a matter of law, we find many of the arguments presented within her response to the administrator's request to reinstate the jury verdict and mentioned in her own assignments of error to be valid. For instance, she urges that the jury was improperly influenced by the defense argument that she was barred from participating in the workers' compensation system because she was an owner rather than an employee. She contends that a corporate officer is covered by the system, and she alleges that the atmosphere at trial was such as to create a manifest injustice. Her arguments combined with the problems recognized hereunder require us to affirm the grant of new trial as we cannot discern whether the jury's verdict was prejudicially tainted by these problems.[1] *Page 9 
 {¶ 27} The first error that pervaded the trial and tainted the jury verdict is the fact that the trial court instructed the jury on the wrong definition of an employee. The administrator continues to use this incorrect definition on appeal to support its position. That is, the court used the following definition as contained in R.C. 4121.01(A)(4):
 {¶ 28} "`Employee' means every person who may be required or directed by any employer, in consideration of direct or indirect gain or profit, to engage in any employment, or to go, or work, or be at any time in any place of employment."
 {¶ 29} However, this statute is prefaced with the warning that the definitions therein are only applicable to sections 4121.01 to 4121.29
of the Revised Code. See R.C. 4121.01(A). These sections deal with the creation of the Industrial Commission, the appointment and duties of the administrator, including his power to discipline employees, and examinations of workplaces for safety. None of these sections are relevant to this case.
 {¶ 30} The definition of employee that should have been utilized at trial and that we must use at this level is contained in R.C. 4123.01. See Rajeh v. Steel City Corp., 157 Ohio App.3d 722, 2004-Ohio-3211
(where this court used R.C. 4123.01 for the proper definition). See, also, State ex rel. Cotterman v. St. Mary's Foundry (1989),46 Ohio St.3d 42, 46 (R.C. 4123.01 contains a broad definition of employee and "does not require that an employee be non-supervisory, but requires only that he be in the service of any person, firm or private corporation."). This proper statutory section provides in pertinent part:
 {¶ 31} "As used in this chapter:
 {¶ 32} "(A)(1) `Employee' means:
 {¶ 33} "(b) Every person in the service of any person, firm, orprivate corporation, including any public service corporation, that (i)employs one or more persons regularly in the same business or in orabout the same establishment under any contract of hire, express orimplied, oral or written, including aliens and minors, household workers who earn one hundred sixty dollars or more in cash in any calendar quarter from a single household and casual workers who earn one hundred sixty dollars or more in cash in any calendar quarter from a single employer, or (ii) is bound by any such contract of hire or by any other written contract, to pay into the state insurance fund the premiums provided by this chapter." R.C. 4123.01 (Emphasis added to relevant portion). *Page 10 
 {¶ 34} Initially, we address the preface, "as under in this chapter." Chapter 4123 is entitled "Worker's Compensation." It contains statutes on compensation, benefits, payroll reporting, types of disabilities, making claims and appeals. It also contains the well-known statement that an employee injured in the course of employment is entitled to compensation for the loss sustained on account of the injury. R.C.4123.54(A)(2). It is chapter 4123, not 4121, from which this case arises. As such, the definition of employee in R.C. 4123.01 should have been provided to the jury rather than the one in R.C. 4121.01.
 {¶ 35} This error is prejudicial because the definition in R.C.4121.01(A)(4) speaks of those who may be directed to engage in employment or to go to work or to be present at a certain time. Since the administrator argued that Ms. Carter was the one doing the directing, the jury could have relied on this definition to deny her coverage. In other words, incorrect use of the definition in R.C.4121.01 allowed the jury to easily exclude a corporate officer who is the owner's wife from coverage.
 {¶ 36} Related to this issue is the administrator's improper argument and evidentiary focus that the jury could find Ms. Carter to be the employer rather than an employee just because she calls the company her own and acts as if she is the owner. By providing the wrong definition, the court essentially concurred in the legality of the argument. The problem with the administrator's argument is that it ignores the relevant statute, the relevant payroll reporting regulation and the information provided on the Bureau's own website. As will be explained below, all of these sources refute the defendant's argument that an owner of a corporation is excluded from coverage. Thus, whether Ms. Carter acted like the owner or whether she in fact was the owner is wholly irrelevant for purposes of the trial.[2]
 {¶ 37} More specifically, we first apply the proper definition of employee under R.C. 4123.01(A)(1)(b). It is undisputed that R B Pizza employs at least one person regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written. That is, the payroll records of Brian Kerr were submitted and were even relied on by the administrator. Whether Ms. Carter was an employee thus depends only upon whether she is a person in the *Page 11 
service of a private corporation. This definition does not on its face exclude an officer, a shareholder or a shareholder's wife from being considered an employee if they were in the service of the corporation.
 {¶ 38} In fact, the statute later clarifies the definition of employee by adding that an employee does not mean a duly ordained minister of a church, an officer of a family farm corporation or an employee who signs a certain waiver granted by the administrator. R.C. 4123.01(A)(2) (pre-H.B. 183, amendments effective November 5, 2004). The statute continues that the employer can elect to cover these types of workers and can elect to cover a member of a partnership or the owner of a sole proprietorship. Id.
 {¶ 39} This all provides further support for the conclusion that an owner or officer of a corporation is not excluded from the definition of employee. That is, an officer of a family farm corporation is specifically excluded, but officers of other corporations are not mentioned. Moreover, there is no mention of the need to file an election for corporate owners or officers as there is for sole proprietors and partners. We point out here that R.C. 4121.05 provides that sections4123.01 (the definition section quoted above) through 4123.94 of the Revised Code shall be liberally construed in favor of the employee.
 {¶ 40} The administrator seems to ignore the existence of a corporate entity here. It is undisputed that R B Pizza is a C Corporation. This is a regular corporation governed by Subchapter C of the Internal Revenue Code. Black's Law Dictionary (6th Ed. 1990), 341 (distinguished from an S corporation which allows pass through income to shareholders). The corporation is the employer, not the officers or the shareholders who work for the corporation. See R.C. 4123.01 (in general) and (B)(2) (defining an employer). Rather, those in service to the corporation are employees. R.C. 4123.01(A)(1)(b).
 {¶ 41} It is possible the administrator, through counsel, was confused by the amendments effected by H.B. 183, which added "individual incorporated as a corporation" to those excluded from the definition of employee in R.C. 4123.01(A)(2) and which now require specific election by such individual in order to receive coverage. However, there are two problems with this theory.
 {¶ 42} First, an individual incorporated as a corporation is defined as a corporation with no employees except the owner. Here, we already established that, *Page 12 
even if Ms. Carter could be considered the owner (due to her role in overseeing all aspects of the store and her marriage to the actual owner), a Mr. Brian Kerr worked simultaneously with Ms. Carter at the store. Second and regardless, the amendments excluding an individual incorporated as a corporation from the definition of an employee were not effective until November 5, 2004, long after Ms. Carter's injury.
 {¶ 43} Furthermore, an administrative regulation provides that the remuneration[3] of the executive officers of the corporation, such as president, vice president, secretary and treasurer, shall be included in the worker's compensation payroll report of the employer. O.A.C. 4123-17-07(A)(1) (effective since 1993). In contrast, the remuneration of officers of a family farm corporation, a member of a partnership or the owner of a sole proprietorship shall not be included on an employer's payroll report unless the employer filed the proper coverage election discussed supra. O.A.C. 4123.17-07(A)(2) and (B)(1).
 {¶ 44} Logically, if the remuneration of corporate officers is reported as payroll for purposes of premiums, these corporate officers are covered by the workers' compensation system. Even under prior Supreme Court law existing before the changes mentioned above, corporate officers and shareholders of small corporations were covered under certain circumstances such as if the officer's injury occurred while performing manual labor. Kuehnl v. Indus. Commn. (1940),136 Ohio St. 313 (also mentioning the need to observe the fiction of the corporation entity even in closely held corporations). See, also,Cotterman, 46 Ohio St.3d at 46, citing Hillenbrand v. Indus. Commn.
(1943), 72 Ohio App. 427 (which found that the facts supporting compensation in Kuehnl were not limitations but were mere observations used to support the decision to cover the officer in that case).
 {¶ 45} Rather than citing the correct definition of an employee, the relevant administrative regulations or even this outdated Supreme Court law, the administrator's brief cites a 1966 Kansas case for the proposition that evidence of using the company's checking account as a personal account is evidence the claimant is the owner rather than an employee and thus is not entitled to workers' *Page 13 
compensation. However, this conclusion contradicts the existence of a corporate form and the aforementioned statute and regulation which provide coverage for corporate officers and owners in Ohio.
 {¶ 46} Finally, the Bureau of Workers' Compensation's own official website states numerous times in numerous places that corporate officers are employees for purposes of workers' compensation. Seewww.ohiobwc.com. See, also, Definition Section; News Section, "HB 183 coverage requirement impacts;" Application for Workers' Compensation, Form U-3 Introduction. It even states that if a husband and wife are co-owners, they are both employees and are not subject to the exception for an individual incorporated as a corporation. See News Section. See, also, "Scenarios Illustrating Active Corporate Officers." This website is extremely persuasive secondary authority on the topic of who is an employee. This is especially so since the administrator of the agency who publishes the website is the defendant herein.
 {¶ 47} In conclusion, the defense relied heavily on its argument that Ms. Carter did not fit R.C. 4121.01's definition of an employee because she was an employer rather than an employee since she acted like an owner and called herself an owner. Since this argument is legally invalid and relies on the wrong definition of employee as erroneously charged to the jury, the jury's verdict is unreliable. A new trial is warranted due to the various errors outlined above which pervaded the trial and tainted the jury verdict in a manner that prohibits accurate review of such verdict by this court. As such, the trial court's grant of a new trial is upheld.
 {¶ 48} For all of the foregoing reasons, the trial court's final judgment denying Ms. Carter's motions for directed verdict and for JNOV and granting Ms. Carter's motion for a new trial is affirmed.
DeGenaro, P.J., concurs. Donofrio, J., concurs.
[1] We also note that it is well-established that even if a trial court states an erroneous legal basis for its judgment, a reviewing court will affirm the decision if it is legally correct for other reasons. Locke v. Locke, 7th Dist. No. 00CO10, 2001-Ohio-3398. See, also, State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 514, citing Myers v. Garson (1993), 66 Ohio St.3d 610, 614-615 and Joyce v.Gen. Motors Corp. (1990), 49 Ohio St.3d 93, 96; State ex rel. Carter v.Schotten (1994), 70 Ohio St.3d 89 ("a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof"). In other words, if the trial court's judgment achieves the right result for the wrong reason, any error is not prejudicial to the losing party. Mt. Pleasant Volunteer Fire Dept.v. Stuart, 7th Dist. No. 01JE11, 2002-Ohio-5227, ¶ 11, citingNewcomb v. Dredge (1957), 105 Ohio App. 417, 424 and State v.Payton (1997), 124 Ohio App.3d 552, 557.
[2] Whether her status as an officer or employee was reported to the Bureau for payroll purposes is another matter not at issue herein. See R.C. 4123.75 (employee for whom an employer failed to pay premiums is still covered). As noted by Ms. Carter, the defendant agreed to forgo any trial argument on payments of premiums.
[3] Remuneration could include not only paychecks (as the administrator's trial arguments would suggest) but also the checks written from R B Pizza to the personal creditors of Ms. Carter. See O.A.C. 4123-17-14(C), citing R.C. 4141.01(H) (which defines remuneration as all compensation for personal services, including commissions and bonuses and the cash value of all compensation in any medium other than cash). *Page 1