OPINION
{¶ 1} Appellant, The Estate of Miriam E. Niemi, Deceased, by Edwin Niemi, Successor Administrator, appeals the judgment of the Trumbull County Court of Common Pleas, Probate Division, following a bench trial on appellant's complaint for *Page 2 
declaratory relief. We are asked to determine whether the trial court erred in finding the transfer of real estate by appellant's decedent, Miriam Niemi, to her nephew Arne Niemi, appellee's decedent, and his wife, appellee Joanne Niemi, was valid. For the reasons that follow, we affirm.
 {¶ 2} This matter was initiated by the filing of a complaint in the probate court alleging the transfer of the real estate located at 2816 Beretta Road, Beretta Township, Ohio from Miriam Niemi to Arne and Joanne Niemi was fraudulent and asking the court to declare the rights of the parties with respect to the property. Arne passed away in 2007 subsequent to the transfer. Joanne Niemi is the administratrix of his estate. The estates of Miriam and Arne are pending in the probate court. Appellee filed an answer denying the material allegations of the complaint, and the matter proceeded to trial.
 {¶ 3} George Gessner, Miriam's attorney, testified that he had conversations with Miriam Niemi in December, 2005, during which she asked him to prepare a power of attorney instrument for her naming her nephew Arne Niemi as her attorney-in-fact. In response to her request, Mr. Gessner prepared a durable power of attorney and, after discussing it with her, Miriam signed it on January 24, 2006. Appellant concedes on appeal that this durable power of attorney was created at Miriam's direction.
 {¶ 4} Mr. Gessner testified that in late December 2005, while Miriam was still living in her home, she asked him to prepare a deed to transfer her real estate from her to Arne and his wife Joanne. Subsequently, Mr. Gessner prepared a deed in which Arne and Joanne were named as the grantees. Mr. Gessner testified that it was Miriam's wish that he prepare the deed to transfer ownership of her home to Arne and his wife. Mr. Gessner testified he had "no reservation" in his mind that Miriam wanted to *Page 3 
transfer ownership of her property to Arne and his wife. Arne signed the deed as attorney-in-fact for Miriam in early March 2006. Miriam passed away on March 22, 2006. She was single, had no children, and died without a will.
 {¶ 5} Mr. Gessner testified that he has known Arne personally and professionally for many years. Arne was a student of his at the local high school in Cortland, Ohio where Mr. Gessner taught. Arne's father died during Arne's junior year in high school, and Mr. Gessner and Arne became good friends after Arne graduated.
 {¶ 6} Mr. Gessner testified that Arne took care of Miriam for many years. He brought food to her and visited her on a daily basis. After Arne was married, he and his wife Joanne continued to provide care to Miriam. They prepared food for her and took it to her. He said Arne was always concerned about Miriam eating properly.
 {¶ 7} Edwin Niemi testified that Miriam was his sister and that there were five siblings in their family. He did not object to Arne's request in the probate court to be appointed administrator of Miriam's estate because Arne and Miriam were "very good friends." Arne has recently passed away, and Mr. Niemi is now serving as successor administrator of Miriam's estate.
 {¶ 8} Miriam's real estate was originally part of a 50-acre farm, which Miriam and Edwin's parents purchased in 1928. In 1965, when their mother passed away, the five children decided that because Miriam would be taking care of their father, they would give her the house and five acres. The rest of the property was divided among the other siblings. After their father passed away, Miriam lived alone in the house.
 {¶ 9} Edwin admitted that as Miriam became older, Arne was the only member of the family that took care of her. Arne took her to her doctors' appointments and in *Page 4 
general took care of her needs. Edwin admitted he did not go to see Miriam and never did anything to help her.
 {¶ 10} Joanne Niemi testified that she and Arne were married in 1998. From the beginning of their marriage, they took care of Miriam's needs. Arne had been doing this for years before they married. Miriam and Arne were close from the time Arne was very young. Joanne also became very close to Miriam, and Joanne referred to her as "Aunt Miriam."
 {¶ 11} Joanne and Arne drove Miriam wherever she needed to go, including to all her doctors' appointments. Joanne cooked for her every day, and she and Arne took the food to her. Joanne did Miriam's laundry, cleaned her house, and mowed her lawn every week. Arne helped with these chores, but his assistance in later years was limited due to a disability. Joanne and Arne checked on Miriam every day. Joanne made sure Miriam took her medicines properly.
 {¶ 12} Arne took Miriam grocery shopping and, if she was unable to go, Joanne and Arne went for her and bought her whatever she needed. Sometimes, Miriam contributed toward her food; otherwise, Joanne and Arne paid for it.
 {¶ 13} Miriam had cataracts and had four eye surgeries. Her sight was extremely limited. She also had two hip surgeries. Joanne and Arne drove her back and forth to hospitals in Cleveland and elsewhere for these procedures. After her surgeries, Miriam stayed with Joanne and Arne at their home during her convalescence until she was able to return home.
 {¶ 14} Miriam had diabetes and had special needs related to this condition. Joanne made sure Miriam ate the right foods and took her medicine. At one point *Page 5 
Miriam developed diabetic sores. Joanne took her back and forth to Trumbull Memorial Hospital to have them treated. Joanne soaked them for her at home.
 {¶ 15} Miriam spent every holiday and all family events with Joanne and Arne.
 {¶ 16} Joanne and Arne took care of Miriam for many years, and the evidence demonstrated that Miriam relied on them for her care and support.
 {¶ 17} Joanne testified that Miriam's other family members did not give her any care. On one occasion Joanne and Arne went on vacation to Canada for ten days. Because no one in Miriam's family would check on her or bring her food, they had to put her in a nursing home for the time they were gone. Once they returned they immediately picked her up and took her home.
 {¶ 18} In January 2006, Miriam developed bronchitis and she and Arne took her to the hospital. She was later transferred to a nursing home. Miriam had bouts of bronchitis in the past for which she was hospitalized and always recovered. Joanne and Arne had no idea this was to be her last illness.
 {¶ 19} Joanne testified that at about that time, Miriam started telling Arne she wanted to give him power of attorney because she wanted to leave them her property. After she went into the nursing home, Joanne and Arne visited her there regularly, and whenever they did she pressed Arne about accepting her power of attorney and putting everything in their name.
 {¶ 20} Joanne testified she was present when Miriam signed the power of attorney at the nursing home. She said Marianne Presley, the supervisor at the home, was also present when Miriam signed the document, and notarized Miriam's signature. *Page 6 
 {¶ 21} Joanne testified that Miriam told Arne to sign the deed for her as her attorney-in-fact, giving them her home. Miriam said she wanted them to have her property because they had taken care of her and she loved them.
 {¶ 22} David Johnson, an employee of Cortland Bank, testified via stipulation. He testified that Arne signed the deed in his presence at the bank's branch in Cortland. He also said that two dates appear on the deed. Arne's signature is dated March 8, 2006, and the notary clause is dated March 5, 2006. He said both were signed on one of those dates, and he inadvertently noted the other date in error.
 {¶ 23} Janice Laughner, Joanne Niemi's sister, testified that Miriam came to Joanne's house on all holidays and family events. Joanne would always pick up Miriam and bring her to these parties and then take her home afterwards.
 {¶ 24} Janice testified that Joanne took good care of Miriam. Joanne cooked for Miriam and then brought the food to her. Joanne did Miriam's laundry, mowed her lawn, and took her to her doctors. She said Joanne and her family members called her "Aunt Miriam" and she was like part of their family.
 {¶ 25} Janice said Miriam relied on Joanne and Arne to take care of her. Arne was always at her house. He checked on her regularly. He drove her wherever she needed to go.
 {¶ 26} Finally, Allyson Rutan testified that she had been Miriam's next-door neighbor for 50 years. She said Joanne went to Miriam's home every day to bring her food, do her laundry, mow her lawn and take her wherever she needed to go. Allyson said Arne and Joanne were very good to Miriam and she trusted them. *Page 7 
 {¶ 27} Allyson testified that Arne regularly checked on Miriam. He spent the night with her when she was ill. He took her to the grocery store and the doctor whenever she needed to go. Allyson testified that Joanne and Arne took care of Miriam for many years, and that none of Miriam's other family members ever did anything for her.
 {¶ 28} Following the trial of this matter, the trial court issued a judgment finding that Miriam executed a durable power of attorney naming Arne E. Niemi as her attorney-in-fact on January 24, 2006, and that it was executed, acknowledged, and notarized according to law.
 {¶ 29} The court found that Miriam was elderly and Arne and Joanne provided care and support to her. Miriam had a close relationship with them and considered them to be her closest family. Miriam's other family members rarely saw her and provided no care and support to her.
 {¶ 30} The court also found that Miriam personally communicated to her attorney Mr. Gessner that she intended to transfer her real estate to Arne and his wife, and asked him to prepare a deed for this purpose. The court found that Arne, as Miriam's attorney-in-fact, executed the deed transferring her real property to himself and his wife on March 5, 2006 or March 8, 2006 in the presence of a notary. The court found that the deed was valid and enforceable.
 {¶ 31} The trial court found that Joanne and Arne rebutted any presumption of undue influence or fraud exerted on Miriam and that appellant failed to sustain its burden of proof. The court declared that the transfer of the subject real property was a valid transfer and that title to the property resides in Joanne and Arne Niemi. *Page 8 
 {¶ 32} Appellant filed a timely appeal from the court's judgment, asserting three assignments of error. For its first assigned error, appellant contends:
 {¶ 33} "THE TRIAL COURT COMMITTED ERROR BY ENFORCING INTER VIVOS TRANSFERS MADE WITH A DURABLE POWER OF ATTORNEY IN VIOLATION OF THE GIFT RESTRICTION SET FORTH IN THE DURABLE POWER OF ATTORNEY DOCUMENT."
 {¶ 34} First, we note that on appeal, appellant also challenges the transfer of Miriam's 1992 Geo Prizm to Arne. However, appellant's complaint did not challenge or even mention the transfer of this vehicle. When appellant questioned Mr. Gessner about this transfer at trial, appellee objected on the ground that appellant had not challenged this transfer in its complaint. Appellant never amended its complaint to include this transfer as a component of its claim, even after this objection was made. Due to appellee's objection, we cannot say the issue was tried by consent for purposes of Civ. R. 15(B). Consequently, the transfer of Miriam's automobile was not properly before the trial court and has not been preserved for appeal. We therefore confine our analysis to the transfer of the real estate.
 {¶ 35} We review the probate court's decision under an abuse of discretion standard of review. Levy v. Thompson, 2d Dist. No. 20641,2006-Ohio-5312, at ¶ 18. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 36} Further, the probate court has jurisdiction to hear and determine actions involving the misuse of a power of attorney, pursuant to R.C. 2101.24(B)(1)(b). Thus, *Page 9 
Arne's alleged misuse of the power of attorney granted to him by Miriam provided the probate court with jurisdiction to determine whether the transfer of Miriam's real estate to Arne and Joanne should be voided.
 {¶ 37} "A power of attorney is a written instrument authorizing an agent, known as an `attorney in fact,' to perform specific acts on the principal's behalf. Testa v. Roberts (1988), 44 Ohio App.3d 161, 164
* * *. `[A] general, durable power of attorney does not authorize attorneys-in-fact to transfer the principal's property to themselves or to others, unless the power of attorney explicitly confers this power. An attorney-in-fact may not make gratuitous transfers of the principal's assets unless the power of attorney from which the power is derived expressly and unambiguously grants the authority to do so.'" Rasnick v.Lenos, 12th Dist. No. CA2004-02-033, 2005-Ohio-2916, at ¶ 20, quotingMacEwen v. Jordan, 1st Dist. No. C-020431, 2003-Ohio-1547, at ¶ 12.
 {¶ 38} Where a confidential or fiduciary relationship exists between a donor and donee, such as between a principal and an attorney-in-fact, the transfer is looked upon with some suspicion that undue influence may have been brought to bear on the donor by the donee. In such circumstances, a presumption arises that the transfer is invalid and the burden of going forward with the evidence shifts to the transferee to demonstrate the absence of undue influence. However, the party attacking the transfer retains the ultimate burden of proving undue influence by clear and convincing evidence. Ament v. Reassure Am. Life Ins. Co., 8th Dist. No. 91185, 2009-Ohio-36, at ¶ 38.
 {¶ 39} First, appellant suggests Arne and Joanne exerted undue influence on Miriam in the transfer of her real property to them. However, the record does not *Page 10 
support this position. The evidence demonstrates that Miriam contacted her attorney Mr. Gessner and told him she wanted to appoint Arne as her attorney-in-fact. She later advised Mr. Gessner she wished to transfer her real estate to Arne and Joanne. To that end, Miriam asked Mr. Gessner to prepare a power of attorney and, later, a deed. The evidence in this case is undisputed that Arne and Joanne shared a close and loving relationship with their Aunt Miriam. Miriam enjoyed this relationship with Arne and Joanne during the entire course of their marriage, and such a relationship existed for many years before that between Miriam and Arne. Arne and Joanne took care of Miriam's daily needs, providing food, transportation, and support. She relied on them, and there is not one hint in this record of any self-dealing. It is important to note there is no suggestion in this case that Miriam suffered from any mental infirmity. In short, there is no evidence in the record to support appellant's allegation of undue influence.
 {¶ 40} Based on the foregoing, we cannot say the trial court abused its discretion in finding the evidence rebutted any presumption of undue influence. We further cannot say the court abused its discretion in finding that appellant failed to sustain its burden to prove by clear and convincing evidence that Arne and/or Joanne exerted undue influence on Miriam. Appellant relied on the presumption of under influence, but failed to present any evidence in support of such allegation.
 {¶ 41} Appellant concedes that under paragraph 26 of the durable power of attorney, Arne was authorized to make gifts to himself and his spouse "as long as that gift did not exceed the $10,000 monetary value." He argues that because the power of attorney includes a cap on each gift in the amount of $10,000 and because the value of Miriam's real estate exceeded $10,000, the trial court should have declared void the *Page 11 
transfer of this asset to Arne and Joanne; ordered the asset be included in Miriam's estate; and then ordered the estate to reimburse Arne and Joanne in the amount of $10,000 each. We do not agree.
 {¶ 42} Mr. Gessner testified that Miriam's intent was to appoint Arne as her attorney-in-fact and to transfer her real property to Arne and Joanne. Miriam called Mr. Gessner and told him she wanted to do this and asked him to prepare the necessary documents. Mr. Gessner took it upon himself to include the cap on gifts in paragraph 26 of the power of attorney. This provision gave Arne the power "to make gifts * * * to any one or more of * * * [Miriam's] descendents and their spouses (including [her] Attorney-in-Fact) * * *. Gifts to each of [her] descendents and their spouses shall not exceed $10,000 annually * * * as allowed by [Internal Revenue Code] 2503(e)." Mr. Gessner testified he included this provision capping the amount of such gifts at $10,000 to be "in compliance with * * * the gift tax."
 {¶ 43} First, we note that paragraph 26 appears to refer to gifts of money only. Contrary to appellant's argument, this provision does not say that gifts are capped at a value of $10,000; it says that giftsshall not exceed $10,000. Appellant has failed to reference the record or cite any authority in support of its argument that this cap applies to Miriam's real estate. Its argument to this effect is therefore not well taken. App. R. 16(A)(7).
 {¶ 44} The trial court did not refer to this monetary cap on gifts in paragraph 26 in its judgment. Instead, the court relied on paragraph 4 of the power of attorney to support the transfer. This section refers to the power of the attorney-in-fact to enter into possession of the principal's real estate. It is axiomatic that possession and ownership *Page 12 
represent different interests in real estate so that Arne's power to take possession of Miriam's real estate does not equate with the power to take ownership of it. We therefore do not agree with the finding of the trial court that the transfer of real estate can be supported by this provision.
 {¶ 45} However, the transfer of Miriam's property to Arne and Joanne can be supported by paragraph 2 of the durable power of attorney. This section granted to Arne the power "to sell * * * or dispose of any or all of [Miriam's] property, real or personal, for such prices and upon such terms of credit or otherwise as [her] Attorney-in-Fact may deem proper." The transfer of real estate from Miriam by Arne as her attorney-in-fact to Arne and Joanne was made by deed. The deed recites that Miriam E. Niemi grants the subject real estate to Arne and Joanne "for valuable consideration paid." In Gardner v. Kern (1926), 115 Ohio St. 575, the Supreme Court of Ohio held:
 {¶ 46} "It is useless to pursue the distinguishing characteristics of an ancestor's deed, whether it be one of gift or purchase, for it has been repeatedly decided by this court that, for the purpose of descent and distribution, when such deed contains recital of a valuable consideration received from the grantee, it is to be construed as a deed of purchase." Id. at 579-580. The Court in Gardner further held:
 {¶ 47} "* * * [The grantor] had the right to impart to his deed the descendible quality of the title he was conveying; and, when he employed therein the recital of a valuable consideration, it will be presumed that he used the recital with the intention of conveying title to his son through the medium of a deed of purchase." Id. at paragraph three of the syllabus. *Page 13 
 {¶ 48} While appellant argues the transfer of Miriam's house was accomplished without the payment of any money to Miriam by Arne and Joanne, there is no evidence in the record to support this argument. Therefore, the presumption that the subject deed was a deed of purchase has not been rebutted. An appellate court in determining the existence of error is limited to a review of the record. State v. Dudas, 11th Dist. No. 2007-L-074, 2007-Ohio-6731, at ¶ 15; State v. Sheldon (Dec. 31, 1986), 11th Dist. No. 3695, 1986 Ohio App. LEXIS 9608, *2;Schick v. Cincinnati (1927), 116 Ohio St. 16, at paragraph three of the syllabus. Without any evidence in support of appellant's argument, there is nothing for us to consider. On appeal it is the appellant's responsibility to support his argument by evidence in the record.Columbus v. Hodge (1987), 37 Ohio App.3d 68.
 {¶ 49} While the trial court did not rely on paragraph 2 of the power of attorney, its decision is also supported by this provision. A reviewing court has the duty to search the record in the interest of supporting the judgment of the lower court and to determine whether its judgment was sound, and to affirm it if it was correct in result, even though the appellate court's reasons may differ from those advanced by the lower court. Newcomb v. Dredge (1957), 105 Ohio App. 417, 424.
 {¶ 50} We cannot say the trial court abused its discretion in declaring the subject real estate transaction valid.
 {¶ 51} Appellant's first assignment of error is not well taken.
 {¶ 52} For its second assigned error, appellant asserts:
 {¶ 53} "THE TRIAL COURT ERRED BY ENFORCING A DURABLE POWER OF ATTORNEY THAT WAS ADMITTEDLY FLAWED ON ITS FACE." *Page 14 
 {¶ 54} Joanne Niemi testified that when Miriam Niemi signed the durable power of attorney, Arne Niemi, who signed the instrument as a witness, was not present. Based on this testimony, appellant argues the power of attorney is not valid and all transfers made thereunder are void. We do not agree.
 {¶ 55} Joanne testified that she and the notary Marianne Presley were present and witnessed Miriam sign the power of attorney instrument. It is undisputed that Miriam intended to sign this document.
 {¶ 56} In any event, whether Arne witnessed Miriam sign the durable power of attorney is irrelevant as the Ohio Revised Code no longer requires that such documents be signed in the presence of witnesses. R.C. 1337.01, effective February 1, 2002, provides:
 {¶ 57} "A power of attorney for the conveyance * * * of any interest in real property shall be signed, acknowledged, and certified as provided in section 5301.01 of the Revised Code."
 {¶ 58} R.C. 5301.01, also effective February 1, 2002, provides:
 {¶ 59} "(A) A deed * * * shall be signed by the grantor * * *. The signing shall be acknowledged by the grantor * * * before a * * * notary public, * * * who shall certify the acknowledgement and subscribe the official's name to the certificate of the acknowledgement."
 {¶ 60} As a result, since February 1, 2002, the execution of a power of attorney is not required to be witnessed. See R.C. 5301.01(B)(1). Arne's signature is therefore superfluous, and the fact that he signed the instrument as a witness either before or *Page 15 
after Miriam's execution is irrelevant. Based on our review of the instrument, it was properly signed, acknowledged, and certified.
 {¶ 61} Appellant's contention that Arne's execution of the document as a witness is somehow fraudulent or constituted a breach of his fiduciary duty is not supported by any reference to the record or by citation to any authority. For this reason alone, its argument is not well taken. See App. R. 16(A)(7). Based on our review of the record, there is no evidence or even a suggestion that Arne signed the durable power of attorney instrument as a witness to defraud Miriam or that by signing as a witness he somehow breached his fiduciary duty to her.
 {¶ 62} We therefore hold the trial court did not abuse its discretion in finding the durable power of attorney valid.
 {¶ 63} Appellant's second assignment of error is not well taken.
 {¶ 64} For appellant's third assigned error, it alleges:
 {¶ 65} "THE TRIAL COURT ERRED IN HONORING A REAL ESTATE TRANSFER EFFECTUATED BY A DEFECTIVE QUIT CLAIM DEED."
 {¶ 66} Appellant argues the deed transferring Miriam's real estate to Arne and Joanne was not properly acknowledged because the notary David Johnson indicated in the acknowledgment clause that Miriam signed the deed in his presence when in fact Arne signed it in his presence as her attorney-in-fact. Appellant argues this alleged wrongdoing on the part of the notary constituted a fraud on "the world," which should invalidate the transfer.
 {¶ 67} R.C. 147.541 sets forth the acknowledgment language a notary is to use in various circumstances. When the transfer is accomplished by an attorney-in-fact, the *Page 16 
notary is to state that the person who signed as attorney-in-fact has done so by proper authority as the act of the principal. R.C. 147.541(C)(4). Instead of using this language, however, the notary used the standard language indicating that the person for whom the deed was signed, i.e., Miriam, appeared before him.
 {¶ 68} We note that while the notary did not use the correct language in the acknowledgment clause, there is no evidence this error was anything other than inadvertent. Moreover, appellant has not drawn our attention to any evidence in the record indicating that the notary intended to mislead anyone by the language he used in the acknowledgement clause. Nor has it cited any controlling authority in support of its position. Pursuant to App. R. 16(A)(7), its argument is therefore not well taken.
 {¶ 69} In any event, this court has previously addressed this issue inBasler v. Multicare Co., Inc. (Nov. 19, 1999), 11th Dist. No. 98-G-2201, 1999 Ohio App. LEXIS 5506, in which this court held:
 {¶ 70} "There is no question that [under] R.C. 5301.01[,] * * * the notary must properly acknowledge the grantor's signature. A failure to comply with the provisions of R.C. 5301.01 can result in an inability to pass `legal title' as that term is defined in the context of affording notice of recordation of the conveyance of the property to creditors and subsequent purchasers. Nevertheless, as between the grantor and grantee, the deed is valid, despite a defective acknowledgment. * * *" (Citations omitted.) Id. at *9.
 {¶ 71} In Citizens Nat'l Bank v. Denison (1956), 165 Ohio St. 89, the Supreme Court held that where the acknowledgment or execution of the deed is defective, it is ineffective as against subsequent creditors. However, such a deed "is valid as between the parties thereto, in the absence of fraud." Id. at 95. *Page 17 
 {¶ 72} Our review of the record reveals there is no evidence that the conveyance of the property from Miriam by her attorney-in-fact to Arne and Joanne was procured by fraud. In addition, the evidence is undisputed that Miriam communicated her intention to her attorney to transfer her real property to Joanne and Arne.
 {¶ 73} We therefore cannot say the trial court abused its discretion in finding that any defect in the acknowledgment clause had no effect on the validity of the subject transfer of real estate.
 {¶ 74} Appellant's third assignment of error is not well taken.
 {¶ 75} For the reasons stated in the Opinion of this court, the assignments of error are without merit. It is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas, Probate Division, is affirmed.
Colleen Mary O'Toole, J., concurs,
Timothy P. Cannon, J., dissents with a Dissenting Opinion.