[Cite as *WWSD, L.L.C. v. Woods*, 2022-Ohio-952.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| WWSD, LLC, | : | |
| Plaintiff-Appellee, | : | No. 20AP-403 |
| | | (C.P.C. No. 17CV-5963) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Brian K. Woods, et al., | : | |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on March 24, 2022

**On brief:** *Law Office of Jeffrey B. Sams,* and *Jeffrey B. Sams.* for appellee. **Argued:** *Jeffrey B. Sams.*

**On brief:** *Brian K. Woods*, pro se.

**On brief:** *Percy Squire*, for appellant Metropolitan Community Services, Inc. **Argued:** *Percy Squire.*

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Defendants-appellants, Brian K. Woods ("Woods") and Metropolitan Community Services, Inc. ("MCS"), appeal from judgments issued by the Franklin County Court of Common Pleas, in favor of plaintiff-appellee, WWSD, LLC, ("WWSD"). For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 2}   Woods is the Chief Executive Officer of MCS, and the parties will be treated as the same entity for purposes of this appeal.  MCS is a nonprofit organization and operates transitional housing for individuals trying to improve their life.  MCS partners with owners of dilapidated properties and restores the property to a livable condition to provide housing for MCS clients.

{¶ 3}   WWSD is a real estate investment and management company, based in California, involved in buying, renovating, renting, and selling real property.  WWSD retained a local real estate company, Realty Executive Decisions ("RED"), to acquire, repair and manage the property located in the Columbus, Ohio area.[1]

{¶ 4}   On or about December 1, 2016, Woods entered into an agreement with Gregory and Karla Poole ("Pooles"), the owners of the real property located at 3774 Washburn Street in Whitehall, Ohio (the "Property").[2]  Pursuant to the agreement, Woods paid for renovations to the property to bring it to a livable condition and in February 2017 placed MCS clients in the property.

{¶ 5}   The Pooles had entered into a mortgage on the property with Huntington National Bank ("Huntington"), on or about July 30, 2007.  On November 17, 2016, Huntington filed a foreclosure action in the Franklin County Court of Common Pleas, docketed as case No. 16-CV-10934, alleging the Pooles were in default for nonpayment of the mortgage.  The Pooles were duly served but did not file an answer and a default judgment was entered in favor of Huntington on January 31, 2017.  The property was sold at sheriff's sale on March 31, 2017, and appellee was the winning bidder.  Pursuant to the sale, a sheriff's deed listing WWSD as the new owner was recorded on May 16, 2017.  However, the deed contained the name of the prior sheriff[3] in the notary acknowledgment block, which was later corrected by filing an Affidavit of Matters Relating to Title, recorded on October 10, 2017.

---

[1] The title to the properties are in the name of WWSD.
[2] The Pooles and Woods entered into a lease agreement commencing December 1, 2016, and an Option to Purchase, Donate, or Return Lease agreement on December 1, 2016.
[3] Dallas Baldwin, the Sheriff of Franklin County, Ohio assumed office on January 3, 2017.

{¶ 6} Woods avers he first became aware that the property was in foreclosure and had been sold when appellee posted a notice on the property informing any occupants that the property had been purchased at sheriff's sale on April 4, 2017. On April 10, 2017, Woods prepared and filed three affidavits for mechanic's lien against the property, stating that he had separate contracts with the Pooles, Huntington, and RED for work performed at the property. Woods subsequently admitted that he did not have a contract with Huntington or RED to perform work, but averred he had a contract with the Pooles.

{¶ 7} On July 6, 2017, appellee filed a four-count complaint against appellants that alleged fraud and slander of title, sought a determination as to the validity of the mechanic's liens, and requested the court quiet title in appellee's favor. Service was perfected on appellants on July 10, 2017, and on August 15, 2017, appellee filed a motion for default judgment, citing a failure of appellants to file an answer. Appellants filed an answer and counterclaim for unjust enrichment and conversion that same day. On August 16, 2017, appellee moved to strike appellants' answer and filed its answer to WWSD's counterclaim on August 22, 2017.

{¶ 8} On July 20, 2017, Woods filed an answer, a motion to intervene, and a motion for a temporary restraining order and preliminary injunction in Franklin County C.P. No. 16-CV-10934, the Huntington foreclosure case. In his pleadings, Woods asserted an interest in the property and requested injunctive relief in the form of a stay of the eviction of his client from the property. On August 21, 2017, Woods withdrew his motions without any action from the court.

{¶ 9} On August 30, 2017, appellee filed a motion for partial judgment on the pleadings, pursuant to Civ.R. 12(C), on its claims for declaratory relief and to quiet title. Appellants filed a response on September 20, 2017, asserting that there were issues of material fact that precluded judgment. The trial court issued a decision on July 17, 2019, denying appellee's motion to strike and for default judgment, but granting the motion for partial judgment on the pleadings as to declaratory judgment and quiet title. The trial court found that appellants' interest in the property was extinguished by the judgment for Huntington in case No. 16-CV-10934, and that "there is no set of facts under which Defendant could prevail on Plaintiff's complaints for declaratory judgment or to quiet title." (July 17, 2019 Decision & Entry on Pl's Mot. at 5.)

{¶ 10} On April 12, 2018, appellee filed a motion for summary judgment, pursuant to Civ.R. 56, on its remaining claims of fraud and slander of title, as well as appellants' counterclaim allegations of unjust enrichment and conversion. Appellant retained new counsel, and, after two requests for extensions of time to file a response, a response was ultimately filed on August 28, 2019.

{¶ 11} On September 17, 2019, the trial court denied both motions for an extension of time, ruled appellants' memorandum in opposition would not be considered, and granted appellee summary judgment on the claims of slander of title and fraud and on appellants' counterclaim of conversion. The trial court denied summary judgment on the counterclaim of unjust enrichment.

{¶ 12} On December 9, 2019, this matter proceeded to jury trial on appellants' single remaining claim of unjust enrichment and to determine appellee's damages for fraud and slander of title. On December 12, 2019, the jury found that appellee was not liable to appellant on the unjust enrichment claim, and the jury awarded appellee compensatory damages in the amount of $32,000 on the fraud and slander of title claims and an additional $11,300 in punitive damages. The parties agreed on the amount of $40,000 for attorney fees. (Aug. 24, 2020 Final Jgmt. Entry at 1.)

{¶ 13} On December 18, 2019, appellants filed a motion for judgment notwithstanding the verdict ("JNOV"), and for a new trial. The motion was denied on January 23, 2020.

{¶ 14} Appellants timely appealed to this court from the judgments issued by the trial court.

## II. Assignments of Error

{¶ 15} Appellant, Brian K. Woods, assigns the following errors for our review:

> **1. The trial court erred by finding sufficient evidence for a slander of title claim.**
>
> **2. The trial court erred by finding sufficient evidence for a fraud claim.**
>
> **3. The trial court erred by ruling an invalid deed can be deemed a Scrivener's Error.**

**4. The trial court erred by finding lis pendens applied
to the Plaintiff.**

**5. The trial court erred by granting punitive damages.**

{¶ 16} Appellant, Metropolitan Community Services, Inc., assigns the following
errors for our review:

**1. Whether appellee had standing to commence this
action in the trial court.**

**2. Whether the trial court erred when it granted
appellee judgment on the pleadings in relation to
appellee's declaratory judgment and quiet title
claims.**

**3. Whether the trial court erred when it granted
Appellee summary judgment on appellee's fraud and
slander of title claims.**

**4. The trial court erred in denying appellant's Motion
for Judgment Notwithstanding the Verdict and for a
New Trial.**

**5. Whether punitive damages should have been
granted to appellee.**

### III. Legal Analysis

{¶ 17} In order to facilitate the analysis of this appeal, we shall consolidate the
assignments of error and consider them out of order.

### A. Woods' Third and MCS' First Assignments of Error

{¶ 18} Appellants allege that appellee lacked standing to bring this action because
of an error in the sheriff's deed conveying title to appellee. Appellants assert that the deed
cannot convey marketable title because of the defective acknowledgement and appellee is
therefore deprived of standing. However, appellants are incorrect regarding this issue and
the assignments of error must be overruled.

{¶ 19} Appellee's position as a purchaser for value grants him standing. A buyer at
a sheriff's sale has an interest "limited to the property and possession." *LaSalle Bank Natl.
Assn. v. Brown*, 2nd Dist. No. 25822, 2014-Ohio-3261, ¶ 17. A purchaser of real property
at a sheriff's sale has "a vested interest in the property." *Ohio Sav. Bank v. Ambrose,* 56

Ohio St.3d 53, 54 (1990). A purchaser at a sheriff's sale was found to "have standing to appear and participate in the proceedings before the trial court to protect its newly acquired interest in the property." *New Residential Mtge. LLC v. Barnes,* 12th Dist. No. CA 2020-4-027, 2020-Ohio-6907, ¶ 17.

{¶ 20} When a sheriff's deed is recorded, "and is signed and acknowledged by a person with an interest in the real property described in the instrument," a rebuttable presumption is triggered that the deed is "valid, enforceable, and effective as if in all respects the instrument was legally made, executed, acknowledged, and recorded." R.C. 5301.07(B). This presumption "may be rebutted by clear and convincing evidence of fraud, undue influence, duress, forgery, incompetency, or incapacity." *Id.* The record below indicates appellants did not attempt to rebut the presumption and the deed is presumed valid as between the Franklin County Sheriff, the grantor, and WWSD, the grantee, sufficient to confer standing upon appellee to protect its title.

{¶ 21} There is no question that R.C. 5301.01 requires a deed to be signed by the grantor and that a notary properly acknowledge the grantor's signature. *Citizens Natl. Bank v. Denison,* 165 Ohio St. 89 (1956). A lien arising from a mortgage with a defective acknowledgement could not establish a superior lien to validly executed subsequent mortgages, and "[w]here the acknowledgment or execution of the deed is defective, it has been held ineffective as against subsequent creditors." *Id.* at *95. MCS argues that the decision in *Citizens* stands for the proposition that a defective acknowledgement does not protect a grantee from third-party claims or confer standing to sue. *Citizens* is completely silent on the issue of standing and provides no authority on that issue, and any reliance regarding standing is misplaced.

{¶ 22} The purpose of acknowledgment is to afford "proof of the due execution of the deed by the grantor, sufficient to authorize the register of deeds to record it." The acknowledgement of a deed is required solely to provide proof that the grantor executed the deed and is a prerequisite to recording the deed and making it constructive notice of all the facts set forth in it. *Fifth Third Bank v. Farrell,* 5th Dist. No. 09 CAE 11 0095, 2010-Ohio-4839, ¶ 30. The validity of a deed at common law did not depend on its acknowledgement. A failure to comply with the provisions of R.C. 5301.07 may result in the "inability to pass 'legal title' as that term is defined in the context of affording notice of

recordation of the conveyance of the property to creditors and subsequent purchasers." *Estate of Niemi v. Niemi,* 11th Dist. No. 2008-T-0082, 2009-Ohio-2090, ¶ 70. However, as between the grantor and grantee, the deed is valid, despite a defective acknowledgement. *Id.* "A deed without acknowledgement, or defectively acknowledged, passes the title equally with one acknowledged, as against the grantor and his heirs," in the absence of fraud. *Swallie v. Rousenberg,* 190 Ohio App.3d 473, 479, 2010-Ohio-4573.

{¶ 23} Courts have examined wrong and missing names in a certificate of acknowledgment. The Ohio Supreme Court of Ohio first held that an acknowledgment that completely omitted the name of the mortgagor was defective, and the purchaser "acquired no legal title." *Smith's Lessee v. Hunt*, 13 Ohio 260, 269 (1844). The space on the acknowledgment was left blank, and the court determined that there was no reasonable way to discern who the correct party should be. The court then took up the *Dodd* case, where the certificate of acknowledgment declared "the above named Charles B. Clark and Mary Clark, his wife," but the parties' actual names were Charles A. Clark and Sara Clark, and the actual names appeared elsewhere in the document. *Dodd v. Bartholomew*, 44 Ohio St. 171, 172 (1886). The *Dodd* court applied the concept of substantial compliance and found that a valid mortgage existed by stating "[w]here an error occurs in the name of a party to a written instrument, apparent upon its face, and from its contents, susceptible of correction, so as to identify the party with certainty, such error does not affect the validity of the instrument." *Id.* at *171. The *Dodd* Court did not expressly overrule *Smith's Lessee* but made a distinction here where there is an issue of construction rather than a failure to adhere to the formalities of execution and leave the grantor's name completely blank.

{¶ 24} The substantial compliance doctrine has been applied in a case where the certificate of acknowledgement listed the name of the corporation but was signed by its corporate officers, *Mid-American Natl. Bank & Trust Co. v. Gymnastics International Inc.*, 6 Ohio App.3d 11 (6th Dist.1982). In interpreting a certificate of acknowledgement, one may refer to any part of the accompanying document, and "[w]here an error occurs in the name of a party to a written instrument, apparent upon its face, and, from its contents, susceptible of correction, so as to identify the party with certainty, such error does not affect the validity of the instrument." *Id.* at *13. It appears that certificates of acknowledgment substantially comply when they in some way identify the person making the

acknowledgment.  *Campbell v. Krupp*, 195 Ohio App.3d 573, 2011-Ohio-2694 (6th Dist.). In analyzing a trustee's petition to declare a mortgage invalid, the bankruptcy court examined a recorded mortgage where the certificate of acknowledgment read "[b]efore me, a notary public in and for said county, personally appeared the above-named Mortgagor, Steven R. Cummings." *Kellner v. City of Kettering,* S.D. Ohio No. 3:12-cv-00176, 2013 U.S. Dist. LEXIS 22473 (Feb. 9, 2013).  The mortgagor's correct name is Linda Koogle, and the name Steven R. Cummings was not known to her or any other party, and it "is undisputed that Steven R. Cummings was not 'the above-named Mortgagor,' is not mentioned anywhere else in the Mortgage, and did not sign the Mortgage in question."  *Id.* at *13.  The court looked to *Dodd* and found that "[f]irst, and perhaps most significantly, the acknowledgment clause specifically refers to the 'above-named Mortgagor.'  As the court found in *Dodd,* the inclusion of this language specifically invites, and allows the reader to look at the text of the document to determine who that person is."  *Id.* at *14.  "Where, as here, the acknowledgment clause provides additional information concerning the person acknowledging the signature, allowing that name to be compared to the text of the mortgage itself, one can determine the true identity of the person who appeared to acknowledge the signature."  *Id.* at *17.  The bankruptcy court held that "even though the name listed in the acknowledgement clause is completely wrong, the Court finds that the acknowledgment clause substantially complies with the statutory requirements.  The nature of the error is obvious and * * * the Mortgage itself supplies the means of correcting the error."  *Id.* at *19.

{¶ 25} R.C. 147.53 requires the notary public to certify that: "(A) The person acknowledging appeared before him and acknowledged that he executed the instrument; (B) The person acknowledging was known to the person taking the acknowledgment, or that the person taking the acknowledgement had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument."  The recitals in the certificate of acknowledgment must comply with R.C. 5301.01 and therefore must identify the grantor.  The revised code mandates that a grantor be named "within the acknowledgment clause so that the person whose signature was acknowledged can be identified" by reviewing the deed.  *Farrell, supra* at ¶ 54.  The certificate of acknowledgment in this action reads "the foregoing was acknowledged before me this 8 day of May, 2017, by Zachary Scott, Sheriff of Franklin County, Ohio."  (May 16, 2017 Recorded Sheriff's Deed at

2.)  The first paragraph of the deed begins with the language "I, Dallas L. Baldwin, Sheriff of Franklin County, Ohio" and goes on to "GRANT, SELL, AND CONVEY unto WWSD, LLC, all rights, title, and interest" regarding the Washburn property.  *Id.*  The grantor signed the deed over a signature block that reads "Dallas L. Baldwin, Sheriff of Franklin County, Ohio."  *Id.*  The name Zachary Scott appears on the certificate of acknowledgment but nowhere else.  It is clear that the certificate of acknowledgment refers to the current sheriff, and that the inclusion of the former sheriff is an unfortunate typographical error.  The deed refers to the Franklin County Sheriff as the grantor and is signed by the Sheriff; Dallas L. Baldwin is identified as the Sheriff in both sections.

{¶ 26}  Applying the doctrine of substantial compliance, it is clear that the current Franklin County Sheriff, Dallas Baldwin, is the proper signatory for a sheriff's deed. Because we can deduce the proper party from the deed itself, it can be determined that the insertion of Zachary Scott in the acknowledgement is not fatal to the deed.

### 1. Scrivener's Error

{¶ 27}  Woods asserts that the trial court erred by ruling that the deed falls under a scrivener's error, but the court has never issued such a ruling.  The term "scrivener's error" was first used by appellee in a pleading to describe the mistake on the sheriff's deed and does not appear in any court orders.  (Sept. 27, 2017 Reply Memo. to Pl's Mot. for Partial Jgmt. on the Pleadings at 2.)  Appellant argues that appellee lacks standing because of the defective deed, but that argument has been rejected above.

{¶ 28}  The exact degree to which appellee possessed legal or equitable title based on the sheriff's deed is not an issue before us today.  However, appellee possessed at least some interest in the property sufficient to confer standing to bring the action in the trial court. Appellee has standing and Woods' third and MCS' first assignment of error is overruled.

## B. Woods' Fourth and MCS' Second Assignments of Error

{¶ 29}  The trial court granted appellee's judgment on the pleadings on the claims of quiet title and declaratory judgment.  From this decision, MCS assigns as its second assignment of error that the trial court erred.  This court overrules the assignments of error.

### 1. Judgment on the Pleadings

{¶ 30}  A party may move for judgment on the pleadings pursuant to Civ.R. 12(C) any time after the pleadings are closed but not so close to a trial date as to cause delay.

Civ.R. 12(C).   When determining a Civ.R. 12(C) motion, the trial court "is required to construe as true all the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party."  *Whaley v. Franklin Cty. Bd. Of Commrs.,* 92 Ohio St.3d 574 (2001).  A court may grant a Civ.R. 12(C) motion only if the material facts are clear and undisputed, and the pleadings demonstrate that the moving party is entitled to judgment as a matter of law.  *State ex rel. Midwest Pride IV, Inc. v. Pontious,* 75 Ohio St.3d 565 (1996).

{¶ 31}  Civ.R. 12 (C) requires that the pleadings must be construed liberally and in a light most favorable to the nonmoving party.  *Case Western Reserve Univ. v. Friedman*, 33 Ohio App.3d 347 (11th Dist.1986).  A trial court is presented only with questions of law in a Civ.R. 12(C) and "may only consider the statements contained in the pleadings, and may not consider any evidentiary materials."  *Burnside v. Leimbach,* 71 Ohio App.3d 399, 402 (10th Dist.1991)

### 2.  Lis Pendens

{¶ 32}  We look to Woods' fourth assignment of error, where he asserts that the trial court committed error by finding that lis pendens applied to appellee.

{¶ 33}  The doctrine of lis pendens, codified at R.C. 2703.26, prevents a third person from acquiring rights that supersede or interfere with a litigant's rights, after that litigant has commenced an action in court.  *Cincinnati ex rel. Ritter v. Cincinnati Reds LLC*, 150 Ohio App.3d 728, 2002-Ohio-7078 (1st Dist.).  "The general intent and effect of the doctrine of lis pendens is to charge third persons with notice of the pendency of an action, and to make any interest acquired by such third persons subject to the outcome and judgment or decree of the pending lawsuit."  *Bank of New York v. Barclay,* 10th Dist. No. 03AP-844, 2004-Ohio-1217, ¶ 10.  The direct and most obvious intent of the lis pendens rule is "to prevent litigants from circumventing the rights of plaintiffs who have initiated litigation by transferring the subject property while an action is pending, thereby frustrating the eventual judgment of the court."  *Huntington Natl. Bank v. R Kids Count Learning Ctr., LLC,* 10th Dist. No. 16AP-688, 2017-Ohio-7837, ¶ 19.  Lis pendens does not require actual notice.

{¶ 34}  On November 17, 2016, Huntington commenced a foreclosure action against the Pooles in case No. 16-CV-10934, and any claims or proceedings brought against the

property after that date are subject to the doctrine of lis pendens. *Wheeling Corp. v. Columbus,* 147 Ohio App.3d 460 (10th Dist.2001). Wood's property interest, based on the lease with the Pooles, "does not permit the lessee to encumber any interest greater than the leasehold." *10302 Madison Ave., LLC v. J.L.E.C., Inc.*, Cuyahoga C.P. No. CV 12 787831 (May 9, 2013). The leasehold was extinguished during the foreclosure action, and the foreclosure did not grant any property interest to defendants. "The rights of possession and quiet enjoyment conveyed through the lease are personal rights; their existence derives from the lessor's title, and they are extinguished upon the foreclosure of that title and the interest incident to it. Absent authorization or consent by the mortgagee to execute the lease, a purchaser at judicial sale will not take subject to it." *Hembree v. Mid-America Fed. S. & L. Assn.,* 64 Ohio App.3d 144, 154 (2d Dist.1989), citing *Cassilly v. Rhodes,* 12 Ohio 88 (1843).

{¶ 35} A mechanic's lien is created "at the time that the work was commenced, or the materials were begun to be furnished." *Schuholz v. Walker,* 111 Ohio St. 308, 314 (1924); *see* R.C. 1311.02. Woods stated that the first day of work performed at the property was December 1, 2016, and the mechanic's liens were created on December 1, 2016, which is after the foreclosure case was filed. Any interest Woods received was then subject to the final decree in the foreclosure case, and that decree did not vest any interest to Woods. Woods recorded the mechanic's liens on April 10, 2017, which was after the foreclosure sale. Because the sale extinguished Woods' rights, the mechanic's liens were invalid when recorded and appellants could not prevail under any set of facts. Therefore, the trial court properly entered judgment for appellee.

{¶ 36} It must be noted that after the foreclosure, appellants still retained a cause of action for unjust enrichment, and the proper forum was a lawsuit, not a lien. "The plaintiff's recourse in this matter was to file a civil lawsuit for damages and not a mechanic's lien." *McClure v. Fischer Attached Homes,* 145 Ohio Misc.2d 38, 2017-Ohio-7259 (C.P.). This was confirmed by the trial court, who allowed appellant's unjust enrichment claims to be submitted to a jury.

{¶ 37} The doctrine of lis pendens prohibited Woods from acquiring any rights superior to the Pooles in the property, and upon the foreclosure sale, a clear and

unencumbered title was conveyed to WWSD. Woods fourth assignment of error is without merit and overruled.

### 3. Declaratory Judgment

{¶ 38} Appellee requested a declaration in its complaint that the mechanic's liens recorded in the Franklin County Recorder's Office ("Recorder's"), are invalid. "A declaratory judgment is a civil action and provides a remedy in addition to all other legal and equitable remedies available." *Aust v. Ohio State Dental Bd.,* 136 Ohio App.3d 677 (10th Dist.2000). In order to succeed on a declaratory action, a party must establish that "(1) a real controversy exists between the parties; (2) a controversy is justiciable in character; and (3) speedy relief is necessary to preserve the rights of the parties * * * all three requirements must be met in order for the declaratory relief to be proper." *Id.* at *681. A justiciable controversy "requires the existence of a legal interest or right, and a 'real controversy' exists when there is a 'genuine dispute between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *JBK Ventures, Inc. v. Ohio Dept. of Pub. Safety,* 10th Dist. No. 20AP-184, 2021-Ohio-2046, ¶ 6. "Ohio's declaratory judgment statutes * * * were adopted to allow courts to address legal uncertainty in a timely way." *Ohio Democratic Party v. LaRose*, 2020 Ohio Misc. LEXIS 131. A declaratory judgment does not have to be the sole remedy available to a party, and does not need to be the final and complete remedy in a controversy. *State ex rel. Thernes v. United Local School. Bd. Dist. Of Edn.*, 7th Dist. No. 07 CO 45, 2008-Ohio-6922.

{¶ 39} R.C. 2721.03 allows any person whose rights are affected by a statute to present a question of validity regarding an action arising under that statute through a declaratory action. The mechanic's liens were filed pursuant to R.C. 1311.01, *et seq.*, and the validity of a mechanic's lien is an appropriate subject for declaratory judgment.

{¶ 40} We have determined that the mechanic's liens are invalid based on the doctrine of lis pendens, and appellants' property interest based on the lease and agreement has been extinguished by the foreclosure and subsequent sale of the property. Considering the pleadings in a light most favorable to appellants, we find that appellant can not prove any set of facts that would allow them to prevail. The granting of a declaratory judgment was proper in this matter.

### 4. Quiet Title

{¶ 41} Appellee asserts that appellants placed a cloud on their title to the property when they recorded the liens. "A cloud on title is a defect in title 'that has a tendency even in the slight degree, to cast doubt upon the owner's title, and to stand in the way of a full and free exercise of his ownership.' " *Cupside Properties Ltd. v. Earl Mechanical Servs.,* 6th Dist. No. L-14-1253, 2015-Ohio-5019, ¶ 27. Invalid mechanic's liens recorded against another's property have been found to constitute clouds on title. "The invalid * * * mechanic's lien created the appearance of an encumbrance on Lawson's title where no encumbrance existed. Therefore, the trial court correctly found Lawson entitled to a decree of quiet title." *Walker v. Lawson,* 2nd Dist. No.28692, 2021-Ohio-1218, ¶ 23.

{¶ 42} An action to quiet title is a statutory cause of action under R.C. 5303.01, which reads "[a]n action may be brought by a person in possession of real property * * * against any person who claims an interest therein adverse to him, for the purpose of determining such adverse interest." "The burden of proof in a quiet title action * * * rests with the complainant as to all issues which arise upon essential allegations of his complaint." *Duramax, Inc. v. Geauga Cty Bd. Of Commrs.,* 106 Ohio App.3d 795, 799 (11th Dist.1995). "An action to quiet title is equitable in nature," and a "court may quiet title only when there is no adequate remedy at law." *McClure* at *47. Since a monetary award would not clear title, the only way to repair plaintiff's title would be to remove the cloud.

{¶ 43} MCS' argument is totally based on the defective deed precluding appellee from being in possession of the property. The deed, however, is not defective, and the trial court did not err when it entered judgment for appellee on its quiet title claim.

{¶ 44} Appellants have no interest in the property, and the mechanical liens are invalid. The liens constitute a cloud on appellee's title. MCS' second assignment of error is overruled.

### C. Woods' First and Second, and MCS' Third Assignment of Error

{¶ 45} Appellant, Woods, first and second assignments of error and appellant, MCS', third assignment of error pertain to the trial court's granting of summary judgment, and we shall consider them jointly. Appellants argue that the trial court erred when it granted summary judgment as to the claims of slander of title and fraud against appellants. We will discuss each claim separately.

### 1. Summary Judgment

{¶ 46} "Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party." *Grubach v. Univ. of Akron,* 10th Dist. No. 19AP-283, 2020-Ohio-3467, ¶ 20, citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978). "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrates the absence of a genuine issue of a fact on a material element of the nonmoving party's claim." *Dreshler v. Burt*, 75 Ohio St.3d 280, 292 (1996). "Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial." *Dunlop v. Ohio Dept. of Job and Family Servs.,* 10th Dist. No. 19AP-58, 2019-Ohio-3632, ¶ 6, citing *Dreshler. at* *293. "Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the nonmoving party." *Gabriel v. Ohio State Univ. Med. Ctr.,* 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 11, citing *Murphy v. City of Reynoldsburg*, 65 Ohio St.3d 356 (1992).

{¶ 47} Civ.R. 56(C) sets forth the evidence a party may use to support its motion for summary judgment. In considering a motion for summary judgment, the court will examine the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any." Civ.R. 56(C). In addition, the rule stipulates that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Civ.R. 56(E). While there is no requirement to submit affidavits, a moving party must "specifically point to something in the record that comports with the evidentiary materials set forth in Civ.R. 56(C)." *Dreshler* at *298.

{¶ 48} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Dreshler* at *293. If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing

that there is a genuine issue for trial." *Id.* "[T]he non-moving party then has a reciprocal burden, as set forth in Civ.R. 56(E), to set forth specific facts showing there is a genuine issue for trial." *Doe v. First Presbyterian Church*, 126 Ohio App.3d 358, 364 (5th Dist.1998); *see* Civ.R. 56(E). The nonmoving party may not rest on the mere allegations of its pleading. *State ex rel. Burnes v. Athens Cty. Clerk of Courts*, 83 Ohio St. 3d 523 (1998). The Supreme Court of Ohio has stated that "even where the nonmoving party fails completely to respond to the motion, summary judgment is improper unless reasonable minds can come to only one conclusion and that conclusion is adverse to the nonmoving party." *Morris v. Ohio Cas. Ins. Co.,* 35 Ohio St.3d 45, 47 (1988). Accordingly, the lack of a response by relator cannot, of itself, mandate the granting of summary judgment. "There is no 'default' summary judgment under Ohio law." *Maust v. Palmer*, 94 Ohio App.3d 764, 769 (10th Dist.1994).

{¶ 49} Appellate review of summary judgment is de novo. *Byrd v. Arbors E. Subacute & Rehab Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935. "When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review." *Id.,* citing *Maust v. Bank One Columbus, N.A.,* 83 Ohio App.3d 103 (10th Dist.1992). "We must affirm the trial court's judgment if any of the grounds raised by the movant in the trial court are found to support it, even if the trial court failed to consider those grounds." *Helfrich v. Allstate Ins. Co.*, 10th Dist. No. 12AP-559, 2013-Ohio-4335, ¶ 7.

{¶ 50} Civ.R. 6(B) allows the trial courts to have discretion in granting extensions of time to respond to pleadings. "Absent an abuse of that discretion, the decision of the trial court to grant or to deny an extension will not be disturbed." *Scaccia v. Lemmie,* 2d Dist. No. 21506, 2007-Ohio-1055, ¶ 13, citing *Marion Production Credit Assn. v. Cochran*, 5 Ohio St.3d 217 (1988).

{¶ 51} Appellee filed its motion for summary judgment on April 12, 2018. During a telephonic status conference, and over appellee's objection, the trial court set August 1, 2019 as the due date for appellants' responses to the summary judgment motion. On August 1, 2019, appellants requested an extension until August 11, 2019 to respond due to the "unanticipated workload" of appellant, MCS', counsel. (Aug. 1, 2019 Mot. to Extend Time at 1.) Then, on August 13, 2019, which was past the requested response date, counsel

requested additional time until August 27, 2019, again due to his busy schedule. The trial court did not immediately rule on the requests for extension, and appellee objected to the second extension.

{¶ 52} The trial court found that the "attorney's only explanation for his failure to meet the deadlines imposed by the Court is that he is too busy with other litigation." (Sept. 17, 2019 Decision & Entry at 3.) "The demands of being a busy lawyer or of being preoccupied with other litigation generally do not constitute excusable neglect." *Dispatch Printing Co. v. Recovery Ltd. Partnership,* 10th Dist. No. 14AP-640, 2015-Ohio-1368, ¶ 16. The trial court denied both requests for an extension of time and declared that "[d]efendant's memorandum in opposition, along with any exhibits or evidence, filed on August 28, 2019, will not be considered." (Sept. 17, 2019 Decision & Entry at 3.) The trial court granted summary judgment in favor of appellee on its fraud and slander of title claims and on appellants' counterclaim for unjust enrichment.

{¶ 53} The focal point of the summary judgment motion is the assertion that the mechanic's liens prepared and recorded by Woods are false and invalid. Mechanic liens are governed by R.C. 1311 and allows a provider of labor or material to place a lien against an interest in real property. R.C. 1311.06. To be a valid mechanic's lien, a court must establish that "(1) a contract existed between the plaintiff and defendant, (2) the contract provided for labor or supplies to be delivered, (3) the labor or supplies were in furtherance of improvements to the property, and (4) the parties contracted for payment to be made upon the improvements." *McClure* at *47.

{¶ 54} For appellants to succeed on its motions for summary judgment, the court must find that no express or implied contract existed regarding appellants' work on the Washburn property. In this case, Woods states in the three mechanic's liens "that the lien claimant furnished certain material or performed certain labor or work in furtherance of improvements located on or removed to the land hereinafter described, pursuant to a certain contract, with the owner, part-owner, lessee, original contractor, subcontractor, or other person, as the case may be." (Apr. 12, 2018 Pl.'s Ex. at 2.) Woods initially averred he had contracts with Huntington, RED, and the Pooles, but subsequently admitted that he did not have a contract with Huntington or RED and did not present any evidence regarding a contract with the Pooles whereby he was entitled to payment. The trial court found that

the mechanic's liens were false and invalid based on the absence of a contract between the parties. This court agrees and finds that the mechanic's liens are invalid. Because the first element required for a mechanic's lien has not been satisfied, and there is no need to discuss the remaining elements.

### 2. Slander of Title

{¶ 55} Appellee argues that Woods was deceptive in recording the invalid mechanic's liens, and the liens constitute a slander of title against the property.

{¶ 56} Ohio authorities recognize the claim of slander of title to real estate as a distinct tort from slander of a person. *Hahn's Elec. Co. v. Cochran*, 10th Dist. 01AP-1391, 2002-Ohio-5009. Slander of title is a tort issue which may be "brought against anyone who falsely and maliciously defames the property, either real or personal, of another, and thereby causes him some special pecuniary damage or loss." *Green v. Lemarr,* 139 Ohio App.3d 414, 430 (2d Dist.2000). A slander of title claim protects economic interests in real estate, and a slander of title claim is personal in nature and protects a person's reputation. *See Restatement of the Law 2d, Torts,* Section 623A Comment g, and Section 624 Comment a (1977).

{¶ 57} Typically, slander of title cases involves documents such as liens or mortgages "filed against a particular piece of property by parties who claim an interest in the property." *Green* at *431; *Gilson v. Windows & Doors Showcase L.L.C.,* 6th Dist. No. F-05-017, 2006-Ohio-2921. Documents filed against real property impact title by placing a cloud on the title. "The filing of mechanic's lien satisfies the publication element." *Prater v. Dashkovsky*, 10th Dist. No. 07AP-389, 2007-Ohio-6785, ¶ 13, citing W. Prosser, *The Law of Torts* Section 122 (3rd Ed. 1964).

{¶ 58} To succeed on a slander of title claim, a claimant must prove that "(1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard for its falsity; and (4) the statement caused actual or special damages." *Green* at *430-31. As a general rule, wrongfully recording an unfounded claim to the property of another constitutes slander of title. This is true so long as the other elements are satisfied, namely malice and special damages.

{¶ 59} In the context of slander of title, a person acts with malice when they act with "reckless or wanton disregard of the rights of anothers." *Consun Food Indus. Inc. v. Fowkes,* 81 Ohio App.3d 63, 72 (9th Dist.1991). "The malice need not be that of a personal hatred." *Id.* One need not act with personal hatred or ill will for the action to amount to malice. It takes more than merely recording a false document to establish malice. Malice was found where a vendor placed a mechanic's lien on a property after they had received notice that the payment had been made in full and then failed to remove the lien after receiving a copy of the payment receipt marked paid in full. *Bradley v. B & G Awning,* 9th Dist. No. 13449, 1988 Ohio App. LEXIS 2686 (Jul. 6, 1988).

{¶ 60} In this matter, it is uncontroverted that Woods prepared and recorded affidavits for false mechanic liens. The question put to the trier of fact in a summary judgment motion is whether the filing of the mechanic's liens constitutes a reckless or wanton act in disregard of appellee. "If a party who records a document which casts a cloud upon another's real estate has reasonable grounds to believe that he has title or a claim to the property, he has not acted with 'malice' to be liable for 'slander of title.' " *Sylvania Bank v. Trala,* 6th Dist. No. L-86-283 (Mar. 20, 1987). "An action for slander of title will not lie where the statement made (affidavit for mechanic's lien in this case) was uttered in good faith with probable cause for believing it." *John Eastman Dev. Co. v. Harvest Dev. Co.,* 9th Dist. No. 1146, 1982 Ohio App. LEXIS 11532 (Sept. 1, 1982). A court found that filing a false mechanic's lien resulted in a slanderous statement disparaging a person's title, and that "a legitimate question of fact exists as to whether the plaintiffs acted with malice or reckless disregard when they recorded the mechanic's lien" because it was not shown that the plaintiffs had knowledge of the falsity of the lien. *McClure* at *22.

{¶ 61} "[M]alice may be understood as the lack of good faith belief in the right to publish the allegedly slanderous utterance." *Sylvania Bank v. Trala, supra* at *10. Appellant stated that "the sole purpose of the filed liens is for the Defendant to recover some of his cost" from working on the property. (May 10, 2018 Reply to Def's Requested Mediation at 2.) Woods admitted in discovery that he did not have a contract to perform work at the property with Huntington or RED. The court did not have any evidence before that Woods had a contract to perform work for payment with the Pooles. Woods avers that in spite of his false statements about the contracts he operated under a good faith belief that

he had a legitimate claim for his costs. However, Woods' good faith argument is also diminished by the fact that he had full knowledge of the foreclosure sale to appellee at the time he recorded the mechanic's liens. It is not reasonable to believe that absent an express agreement you would have interest in real property after a foreclosure sale to a new party. Even though he is a layman, Woods misunderstanding of the law is no excuse for his actions.

{¶ 62} Woods argues evidence of his good faith belief, but most of the evidence offered by Woods came later in the litigation of this matter and was not before the court when it ruled on the summary judgment motion. Woods states "[f]irst, substantial and very important, a full careful examination of Plaint's Trial Exb. #8, and T. Trans pgs. 315-318, is evidence Woods did everything possible to resolve the instant matter and avoid litigation short of permitting the Plaintiff of taking complete advantage of enriching themselves upon the labor of Woods' back." (Appellant Woods' Brief at 5-6.) Appellee met its burden to demonstrate there was no issue of genuine fact, and appellants set forth no facts to the contrary.

{¶ 63} The trial court focused on the false statements in the liens regarding the existence of a contract and held in its decision granting summary judgment that "the mechanic's liens involving RED and Huntington were filed with reckless disregard of their falsity." (Sept. 17, 2019 Decision & Entry at 5.)

{¶ 64} Appellee asserted in its motion for summary judgment that:

> Defendant's actions recklessly and wantonly disregarded Plaintiff's rights to title to the Property such that Defendant's actions are malicious. Their actions defamed Plaintiff's title to the Property. Plaintiff has suffered damages due to its inability to acquire clear title to the Property. Therefore, Defendants have slandered Plaintiff's title to the Property.

(April 12, 2018 Pl's Mot. for Summ. Jgmt. at 12.)

In *Walker*, the appellate court found that a plaintiff acted with reckless disregard when he knowingly recorded a false mechanic's lien to bring a foreclosure action against the defendant. *Walker v. Lawson, supra.* That reckless disregard for the property rights of others is apparent here.

{¶ 65} Woods published a slanderous statement that disparaged appellee's title when he recorded the mechanic's liens in the Recorder's office. The statements were false because no contract existed between Woods and the parties named in the mechanic liens and Woods had knowledge that the liens were false. Finally, appellee suffered damages, as evidenced by the jury award. The evidence offered by appellee is sufficient to sustain the granting of summary judgment on the slander of title question.

### 3. Fraud

{¶ 66} The mechanic's liens are alleged to have been fraudulently prepared by appellants. Fraud is defined as: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464 (1998). In order to establish a claim of fraud, it is necessary for the party to prove all of the above elements. Whether fraud exists is generally a question of fact. *Interstate Gas Supply, Inc. v. Calex Corp.,* 10th Dist. No. 04AP-980, 2006-Ohio-638.

{¶ 67} Appellants must prove that a false representation of fact was made with knowledge of its falsity or with reckless disregard. It is uncontroverted that the mechanic's liens were based on information that Woods knew was false, and this satisfies the first element of fraud. The second element of fraud is that the representation was material, and the representation stating there is a contract is material, so the second element is satisfied. The third element requires that the statement was made with the intent to mislead. Here, the false statement that appellants had contracts were made to mislead the Recorder's office into thinking it was a valid and enforceable mechanic's lien. The fourth element is that someone did in fact rely on the statement, and the Recorder relied on the misrepresentation to actually record the liens as if valid. Finally, appellee must suffer an injury as a direct result of appellants' misrepresentation, and that was demonstrated at trial. Summary judgment was proper when looking at fraud. A bare case of fraud was substantiated.

{¶ 68} Woods' first and second and MCS' third assignment of error should be overruled.

### D.  Woods' and MCS' Fifth Assignment of Error

{¶ 69}  Appellants challenge the award of punitive damages to appellee in their fifth assignment of error.  "Punitive damages are intended to deter conduct resulting from a mental state that is 'so callous in its disregard for the rights and safety of others that society deems it intolerable.' "  *Ward v. Hengle*, 124 Ohio App.3d 396, 405 (9th Dist.1997).  The burden is on the party seeking punitive damages to prove by clear and convincing evidence that it is entitled to them.  *Cabe v. Lunich*, 70 Ohio St.3d 598 (1994).  Punitive damages are proper when a party's actions "demonstrate malice or aggravated or egregious fraud." *Gold Craft Co. v. Ebert's Contr. & Remodeling LLC,* 10th Dist. No. 09AP-448, 2010-Ohio-3741, ¶ 12.  An appellate court reviews a civil judgment to determine if an award of punitive damages is an abuse of discretion and against the legal sufficiency of the evidence and must review the record to see if the damage award is supported by "some competent, credible evidence."  *Id* at ¶ 11.

{¶ 70}  The required malice to support an award of punitive damages is either "(1) that state of mind under which person's conduct is characterized by hatred, ill will, or spirit of revenge, or (2) a conscious disregard for rights and safety of other persons that has great probability of causing substantial harm."  *Preston v. Murty*, 32 Ohio St.3d 334, 336 (1987).  Absent an admission of malice, "a finding of malice may be inferred from conduct and surrounding circumstances."  *Gold Croft Co.* at ¶ 13.

{¶ 71}  "Since punitive damages are assessed for punishment and not compensation, a positive element of conscious wrongdoing is always required.  This element has been termed conscious, deliberate, or intentional.  It requires the party to possess knowledge of the harm that might be caused by the behavior."  *Preston* at *335.  "Actual malice requires consciousness of the near certainty (or otherwise stated 'great probability') that substantial harm will be caused by the tortious behavior.  Any less callous mental state is insufficient to incur that level of societal outrage necessary to justify an award of punitive damages." *Estate of Schmidt v. Derenia,* 10th Dist. No. 03AP-335, 2004-Ohio-5431, ¶ 11.

{¶ 72}  Before punitive damages can even be considered, a party must first prove the basic elements of fraud, and then demonstrate either "that the fraud is aggravated by the existence of malice or ill will," or that it is "particularly gross or egregious."  *Charles R. Combs Trucking Inc. v. International. Harvester Co.*, 12 Ohio St.3d 241, 245 (1984).  We

must therefore find that plaintiff's actions were either "characterized by hatred, ill will, or a spirit of revenge," or "extremely reckless behavior revealing a conscious disregard for a great and obvious harm" *Preston* at *335. "[A] bare case of fraud" is insufficient to support an award of punitive damages. *Logsdon v. Graham Ford Co.*, 54 Ohio St.2d 336, 339 (1978); *see*, 25 Ohio Jurisprudence 2d, Fraud & Deceit, Section 205. Actual damages, an element of fraud, is necessary even in a bare case of fraud, so punitive damages require a far greater showing. *Epicor Software Corp. v. Sample Machining Co.,* 2d Dist. No. 20390, 2005-Ohio-2234.

{¶ 73} The record reflects that the fraud in this case is not characterized by hatred, ill will or revenge, and the only basis for punitive damages would be extreme reckless behavior by appellants. Woods recorded the mechanic's liens on April 10, 2017. At this date, Woods had knowledge that the property had been sold at a foreclosure sale. Although Woods emphasized his mistaken good faith belief that someone should reimburse him for his work on the property, there could be no such good faith after the sale of the property. The Pooles, the party to the lease and agreement, were no longer the owners. Huntington was no longer the mortgagee. Without placing any doubt on Woods' belief, the only proper recourse was to file a lawsuit, which would manifest itself as a counterclaim for unjust enrichment. Woods could not enforce a contract with a lien after a foreclosure sale, and this is indicative of bad faith and reckless behavior.

{¶ 74} Appellee also argues that it requested appellants to release the liens several times, and appellants refused to do so.

{¶ 75} Attorney fees are only awarded in fraud cases where punitive damages would be appropriate. *Galmish v. Cicchini,* 90 Ohio St.3d 22, 35 (2000) "As such, an award of attorney fees will not be sustained either by the denial or reversal of an award of punitive damages." *Ferritto v. Olde & Co., Inc.*, 62 Ohio App.3d 582, 588 (1989).

{¶ 76} Punitive damages have been proven. Appellants' fifth assignment of error is overruled.

## E. Motion for Judgment Notwithstanding the Verdict and For a New Trial

{¶ 77} MCS assigns as its fourth assignment of error that it is entitled JNOV and for a new trial. After a judgment is entered from a jury verdict, the losing party may move to have the judgment set aside pursuant to Civ.R. 50(B). A motion for JNOV will be sustained

when the evidence, "construed most strongly in favor of" the nonmoving party was "legally sufficient to sustain the verdict" rendered at trial. *Environmental Network Corp. v. Goodman Weiss Miller L.L.P.*, 119 Ohio St.3d 209, 214 (2008). If so, the trial court judgment must stand. *State Farm Fire & Cas. Co. v. Capital Roofing, LLC.*, 10th Dist. No. 18AP-689, 2020-Ohio-642. A motion for JNOV "is used to determine only one issue: whether the evidence is totally insufficient to support the verdict." *Jeffrey v. Marietta Mem. Hosp.* 10th Dist. No. 11AP-492, 2013-Ohio-1055, ¶ 23. Because the motion necessarily presents a question of law, a de novo standard of review is required.

{¶ 78} In a claim where the jury's verdict in favor of appellee was against the manifest weight of the evidence, we are required to consider the entire record and "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that [the judgment] must be reversed and a new trial ordered." *Wheatley v. Howard Hanna Real Estate Servs.,* 9th Dist. No. 13CA10505, 2015-Ohio-2196, ¶ 11. As with criminal cases, a reversal on manifest weight grounds in civil cases is likewise "reserved for the exceptional case in which the evidence weighs heavily against the judgment." *Id.*

{¶ 79} On its face, appellants' arguments on appeal deal with the perceived prejudice arising from the trial court informing the jury that defendants had committed fraud. Appellants concede that the motion is based "upon the irregularity in the trial court caused by the Court's pretrial summary judgment decision that held Defendants had committed fraud and slandered Plaintiff's title," and continue to assert the summary judgment decision was erroneous and incorrect. (Jan. 7, 2020 Memo. in Opp. to Mot. for JNOV & New Trial at 1.) Appellants do not argue that anything that happened during the trial – other than a reference to the summary judgment decision – supports the motions for JNOV and for a new trial.

{¶ 80} "[A] summary judgment proceeding is not a trial but, rather is a hearing upon a motion." *Amare v. Chellena Food Express,* 10th Dist. No. 08AP-678, 2009-Ohio-147, ¶ 14. "Therefore, where an appellant files a post-judgment motion listed in App.R. 4(B)(2) but where the motion is inapplicable to the type of judgment issued by the trial court, the motion is a nullity for purposes of the Appellate Rule." *Davis v. Barton,* 7th Dist. No. 20

MA 0064, 2021-Ohio-2359, ¶ 30.  Accordingly, because appellants' motion for a new trial does not apply to a judgment entry granting summary judgment, the motion is rendered moot.

{¶ 81} A party may move for a new trial pursuant to Civ.R. 59, which states the following:

> (A) Grounds for new trial. A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
> (1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;
>
> * * *
>
> (9) Error or law occurring at the trial and brought to the attention of the trial court by the party making the application.

This court reviews a trial court's ruling on a motion for a new trial applying an abuse of discretion review.  *Catalanotto v. Byrd,* 9th Dist. C.A. No. 27824, 2016-Ohio-2815.  An abuse of discretion implies that the court's decision is arbitrary, unreasonable, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).  A motion for a new trial test whether the judgment is sustained by the weight of the evidence.  *C.E. Morris Co. v. Fooley Cosntr. Co.*, 54 Ohio St.2d 279 (1978).  A judgment is not against the manifest weight of the evidence when there is competent, credible evidence going to all the essential elements of the case.

{¶ 82} Sufficient evidence supports the jury's verdict regarding the unjust enrichment claim.  For the reasons discussed above, the awarding of punitive damages was incorrect.  The assignments of error are overruled regarding the unjust enrichment claim and the awarding of punitive damages.

## V. Conclusion

{¶ 83} For reasons stated above, appellant, Woods', first, second, third, fourth, and fifth assignments of error are overruled.  Appellant, MCS', first, second, third, fourth, and fifth assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgments affirmed*

LUPER SCHUSTER, P.J., concurring in part and dissenting in part.
KLATT, J. concurs.

---

LUPER SCHUSTER, P.J., concurring in part and dissenting in part.

{¶ 84} I agree with the majority's resolution of MCS's first and second assignments of error, the portion of MCS's fourth assignment of error related to the unjust enrichment claim, and Woods's third and fourth assignments of error. Additionally, while I would agree with the majority's resolution of Woods's first assignment of error and the portion of MCS's third assignment of error related to the slander of title claim, I reach that conclusion for different reasons than expressed by the majority. Unlike the majority, I would sustain Woods's second assignment of error and the portion of MCS's third assignment of error related to the fraud claim, and would find moot Woods's and MCS's fifth assignments of error, and the portion of MCS's fourth assignment of error related to the fraud claim and punitive damages. Therefore, I respectfully concur in part and dissent in part.

{¶ 85} In Woods's first and MCS's third assignments of error, appellants argue the trial court erred in granting appellee's motion for summary judgment on the claim of slander of title. "A claim for slander of title arises when a person falsely and maliciously defames a title to property and causes some special pecuniary damages or loss." *Metzler v. Fifth Third Bank*, 10th Dist. No. 16AP-638, 2017-Ohio-7088, ¶ 14, citing *Prater v. Dashkovsky*, 10th Dist. No. 07AP-389, 2007-Ohio-6785, ¶ 11. As the majority notes, to prevail on a claim of slander of title, a claimant must prove actual or special damages. *Prater* at ¶ 12, citing *Green v. Lemarr*, 139 Ohio App.3d 414, 430-31 (2d Dist.2000).

{¶ 86} The trial court, in its decision and entry granting appellee's motion for summary judgment on the claim of slander of title, does not specify the evidence demonstrating there is no genuine issue of material fact that appellee suffered actual or special damages but concludes, more generally, that appellee has demonstrated all the elements of a claim of slander of title. In finding the trial court did not err in granting appellee's motion for summary judgment on its claim of slander of title, the majority concludes "appellee suffered damages, as evidenced by the jury award." (Majority at ¶ 65.) I would not find, as the majority does, that a jury award of damages constitutes proof, at the summary judgment stage, that a claimant suffered actual or special damages. Instead,

I would note that because appellee put forth Civ.R. 56 evidence that it engaged in litigation to quiet title, and the trial court granted partial judgment on the pleadings with respect to appellee's claim for declaratory judgment and to quiet title, the trial court did not err in concluding there remained no genuine issue of material fact that appellee suffered actual or special damages related to the slander of title claim. *See Green* at 434-36 (noting in the context of slander of title, "recoverable pecuniary loss" includes both "the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement" and "the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement," and holding that "in a proper case, a party could recover the attorney fees incurred in removing a cloud on title, as 'special damages,' and could also recover attorney fees for prosecuting a slander of title action"). *See also Silberhorn v. Flemco, L.L.C.*, 8th Dist. No. 108346, 2020-Ohio-913, ¶ 16 ("[a]ttorney fees incurred in litigation to quiet title satisfy the damages element for slander of title"). Thus, I would overrule Woods's first assignment of error and overrule in part MCS's third assignment of error with respect to the trial court granting appellee's motion for summary judgment on the claim of slander of title, but I would reach that conclusion for different reasons than the majority.

{¶ 87} Additionally, under Woods's second and MCS's third assignments of error, appellants argue the trial court erred in granting appellee's motion for summary judgment with respect to the fraud claim. As the majority states, to prevail on a fraud claim, a plaintiff must prove: (1) a representation, or if a duty to disclose exists, concealment of a fact, (2) that is material to the transaction at issue, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent to mislead another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Santagate v. Pennsylvania Higher Edn. Assistance Agency (PHEAA)*, 10th Dist. No. 19AP-705, 2020-Ohio-3153, ¶ 37. With respect to the sixth element, resulting injury, I do not agree with the majority's conclusion that appellee's injury "was demonstrated at trial." (Majority at ¶ 67.) Again, because the trial court disposed of the fraud claim, though not the amount of damages, through summary judgment, I would not

find the jury's award of damages at trial constituted proof of injury for purposes of summary judgment and would instead focus on whether the trial court erred in finding appellee put forth sufficient Civ.R. 56 evidence with its motion for summary judgment to support the conclusion that there remained no genuine issue of material fact that appellee suffered an injury proximately caused by the reliance upon the representation.

{¶ 88} Here, appellee did not, in its motion for summary judgment, point to any specific portions of the record demonstrating that it suffered a resulting injury proximately caused by reliance on the representation. *See Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996) (the party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact). Instead, appellee alleged more generally in its motion for summary judgment that the injury it suffered "include[ed] not receiving clear title to the Property." (Pl.'s Mot. for Summ. Jgmt. at 13.) Appellee did not point to any Civ.R. 56 evidence demonstrating how the alleged injury was proximately caused by reliance on the representation. Nonetheless, in granting appellee's motion for summary judgment as to the fraud claim, the trial court stated "[t]hough [appellee] has not supplied any specific information as to what other parties have relied on this information, it is reasonable to infer that any potential purchaser of the property would rely on these liens as a basis to decline purchasing the property, resulting in injury to [appellee] in not being able to sell the property." (Decision & Entry on Pl.'s Mot. for Summ. Jgmt. at 6.) Being mindful that, in a motion for summary judgment, the burden is on the moving party to affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that there are no genuine issues of material fact, I would find the trial court erred both in finding appellee satisfied its Civ.R. 56 burden through the conclusory allegations in its motion for summary judgment related to injury and in expanding upon appellee's allegations to make inferences of possible injury without specific Civ.R. 56 evidence demonstrating the same. *Dresher* at 293; *Long v. Mt. Carmel Health Sys.*, 10th Dist. No. 16AP-511, 2017-Ohio-5522, ¶ 13 ("[t]he moving party does not discharge [its] initial burden under Civ.R. 56 by simply making conclusory allegations"). Therefore, I would sustain Woods's second assignment of error and sustain in part MCS's third assignment of error with respect to the trial court's

granting of summary judgment on appellee's claim of fraud and would direct the issue of liability on the fraud claim to be determined at trial.

{¶ 89} In Woods's and MCS's fifth assignments of error, appellants argue the trial court erred in awarding punitive damages. Because I would conclude the trial court erred in granting appellee's motion for summary judgment with respect to the fraud claim, I would additionally find Woods's and MCS's fifth assignments of error to be moot as a determination of punitive damages is premature until resolution of appellants' liability on the fraud claim.

{¶ 90} Finally, in its fourth assignment of error, MCS argues the trial court erred in denying its motion for judgment notwithstanding the verdict. Because I would find the trial court erred in granting appellee's motion for summary judgment with respect to the fraud claim, my resolution of that issue would render moot the portion of this assignment of error related to the fraud claim and the punitive damages.

{¶ 91} Based on these reasons, I respectfully concur in part and dissent in part.